Janet L. ROBERTS, Appellant–
Petitioner,

v.

David K. ROBERTS, Appellee–
Respondent.

No. 10A05–9402–CV–65.

Court of Appeals of Indiana,
Fifth District.

Dec. 14, 1994.

Earl C. Mullins, Jr., Masters Mullins & Arrington, Clarksville, for appellant.

Ronald R. Fifer, Douglas B. Bates, Stites & Harbison, Jeffersonville, for appellee.

## OPINION

SHARPNACK, Chief Judge.

Janet L. Roberts appeals the trial court's order modifying the maintenance award in the decree of dissolution of Janet's marriage to David K. Roberts. David cross-appeals. We reverse.

Janet raises one issue for our review, which we restate as two issues: (1) whether the trial court erred in modifying the maintenance order where the maintenance order resulted from the parties' agreement, and (2) whether David met his burden of showing changed circumstances so substantial and continuing as to warrant a change in the maintenance order.

David raises two issues for our review, which we restate as whether the trial court erred in terminating the maintenance as of December, 1993, and not June 4, 1993. Because we reverse, we need not address this issue.

Janet and David were married on April 30, 1977. Janet filed a petition for dissolution on January 2, 1992. On October 16, 1992, the court entered a dissolution decree. Among the provisions of the dissolution decree was the following:

"D. The parties advised the court they have entered into an oral settlement agreement, the provisions of which are as follows:

\*   \*   \*   \*   \*   \*

10) *Rehabilitative Maintenance.* The husband shall pay rehabilitative maintenance to the wife conditioned upon its being fully tax deductible by him and includable by the wife in her income for tax purposes. It is specifically agreed between the parties that this obligation to pay rehabilitative maintenance will cease upon the death of the wife. The amount of the maintenance is fixed at Three Hundred Dollars ($300.00) per month for forty (40) continuous months beginning October 1, 1992."

Record, pp. 64, 67.

On July 26, 1993, David filed a petition to modify the dissolution decree, requesting that the maintenance be terminated effective June 4, 1993, the date of Janet's remarriage. On September 27, 1993, following a hearing, the court entered its order granting David's petition to modify. The court found, in pertinent part, that

"there are substantial and changed circumstances of a continuing nature which make the existing order as to rehabilitative maintenance unreasonable in that the petitioner remarried on June 19, 1993. The rehabilitative maintenance order is to be modified with the [sic] December, 1993 being the last payment, and the Respondent should be relieved of all further rehabilitative maintenance payments provided for in the Decree of Dissolution."

Record, p. 86.

I

Janet argues that the maintenance provision in the dissolution decree was not subject to modification because it was predicated upon the agreement of the parties.

An award of maintenance may be included in a dissolution decree in either of two ways. First, the court may order maintenance pursuant to Indiana Code § 31–1–11.5–9(c) after making the findings required under I.C. § 31–1–11.5–11(e), which authorizes the court to find that maintenance is necessary for reasons of a spouse's incapacitation, insufficient assets, or need for rehabilitation. I.C. § 31–1–11.5–11(e)(1)–(3). Second, the court may order maintenance pursuant to the provisions of I.C. § 31–1–11.5–10(a), which authorizes the court to award maintenance pursuant to an agreement between the parties "to promote the amicable settlements of disputes that have arisen or may arise between the parties to a marriage." I.C. § 31–1–11.5–10(a).

The statutory provision for the modification of maintenance, however, appears to authorize only the modification of maintenance ordered under the first method above. Under I.C. § 31–1–11.5–17(a), an order for maintenance in a dissolution decree ordered under I.C. § 31–1–11.5–9(c) may be modified or revoked, in pertinent part, upon a showing of "changed circumstances so substantial and continuing as to make the terms unreason-

able." I.C. § 31–1–11.5–17(a)(1). In other words, a maintenance award based on a spouse's incapacity, insufficient assets, or need for rehabilitation may be modified pursuant to I.C. § 31–1–11.5–17(a), but no provision is made for the modification of maintenance ordered pursuant to an agreement of the parties.

In *Bowman v. Bowman* (1991), Ind.App., 567 N.E.2d 828, the court addressed this issue as follows:

"By its terms, I.C. 31–1–11.5–17(a) only applies to authorize the modification of an award of spousal maintenance made upon a trial court's finding of incapacitation. It does not authorize the modification of awards of spousal maintenance predicated upon an agreement of the parties.

Moreover, it is well settled that divorcing spouses have more flexibility in crafting their own property settlements than do divorce courts. *Smith [v. Smith* (1989), Ind.App., 547 N.E.2d 297]. A trial court may order spousal maintenance only after a showing of incapacitation. *Id.* However, divorcing spouses crafting their own agreements may provide for maintenance without such a showing. *Id.* Therefore it follows that while a divorce court is prohibited from fashioning an award of spousal maintenance containing a provision that the award is not subject to modification, divorcing couples are perfectly free to craft their own agreements—as did the parties in the present case—for an award of maintenance that is not subject to modification."

*Bowman*, 567 N.E.2d at 830. As noted, the maintenance provision in *Bowman* contained a provision that the maintenance obligation was not subject to modification, and as such *Bowman* is distinguishable from the present case. The *Bowman* court is at least technically correct, however, in that by its terms section 17(a) does not authorize the modification of awards of spousal maintenance predicated upon an agreement of the parties. The question remains as to whether maintenance awards predicated upon an agreement of the parties are immune from modification in the absence of a provision to that effect.

In *Pfenninger v. Pfenninger* (1984), Ind. App., 463 N.E.2d 1115, the court answered that question as follows:

"In *Farthing v. Farthing*, (1978) 178 Ind. App. 336, 382 N.E.2d 941, *trans. denied* (1979), this court squarely held that a maintenance award may be modified upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable.... This court impliedly recognized that maintenance awards may be modified in *Wilhelm [v. Wilhelm,* (1979) Ind.App., 397 N.E.2d 1079,] where this court said:

'A degree of flexibility was retained for maintenance awards, but the legislature sought to achieve finality in regard to property division. This approach is consistent with the purposes behind the respective awards.

A maintenance or alimony award is designed to help provide for a spouse's sustenance and support; therefore, conditions are often attached to these awards which permit their alteration in light of changes in circumstances. [Citations omitted.]'

397 N.E.2d at 1081. *See also Paxton [v. Paxton]*, [ (1981) Ind.App.], 420 N.E.2d [1346] at 1349, fn. 2 (recognizing that so-called 'permanent' maintenance awarded under IC § 31–1–11.5–9(c) is 'temporary' in the sense that it is subject to further order of the court).

The clear holding in *Farthing*, and its implied recognition in both *Wilhelm* and *Paxton* is in accordance with the general rule.

'Ordinarily the court has the power to modify a decree for alimony, even though it is based upon or incorporates an agreement for payments thereof. On the other hand, the court does not have the power to modify a true property settlement or a decree incorporating it, even though it provides for periodic payments as distinguished from a lump sum or a transfer of property, unless the settlement itself authorizes a modification by the court. [Emphasis added.]'

24 Am.Jur.2d *Divorce and Separation* § 846 (1983).

Thus, a provision for maintenance is subject to modification whether it is based upon the decree of the court or upon the agreement of the parties. Our supreme court in *Meehan v. Meehan*, (1981) Ind., 425 N.E.2d 157, 160, stated:

'[T]he fact that a child support order has been entered pursuant to the terms of a settlement agreement, even where, as here, it is intended as forever determinative by the parties, is of no consequence to the questions of whether the order should subsequently be modified....'

We perceive no difference between a child support order and a maintenance award in this respect. Both are subject to modification upon a showing of a change of conditions so substantial and continuing as to make the terms unreasonable. That the award was entered as the result of an agreement by the parties is of no moment and does not deprive the parties of the right to seek modification in a proper case."

*Pfenninger*, 463 N.E.2d at 1120–21.

The *Pfenninger* court's citation to *Meehan* was implicitly criticized, however, in *Bowman*.

"The *Meehan* decision involving a child support order and the present case involving a spousal support order are governed by entirely different principles of public policy. We have consistently held that the parent having custody of a child is merely the trustee of the child support payments and has no right to contract away the benefits of the trust in favor of that child. *Pickett v. Pickett* (1984), Ind.App., 470 N.E.2d 751. Similarly, the custodial parent has no right to enter into an agreement regarding child support that contains a nonmodification provision where such a provision could prejudice the right of the child to be supported by its parent.

An entirely different principle of public policy is at work in the present case, namely, the freedom to contract. The Indiana Dissolution of Marriage Act, IND.CODE 31–1–11.5–10, expressly encourages settlement agreements. *Smith, supra.* A property settlement agreement which is merged and incorporated into a divorce

decree is a binding contract. *Id.* In the past, we have not hesitated to enforce a divorce settlement agreement which would have been in excess of the divorce court's authority had it been crafted by the divorce court and which was shown to be, over time, grossly inequitable."

*Bowman*, 567 N.E.2d at 830–31.

We agree with the *Bowman* court that child support and maintenance must be distinguished on the basis of the parties' contractual capacity, and to that extent the *Pfenninger* decision is incorrect. The Indiana Supreme Court, however, adopted the substance of the *Pfenninger* decision in *Myers v. Myers* (1990), Ind., 560 N.E.2d 39, where it affirmed and incorporated in part a court of appeals decision finding that under *Pfenninger*, "a maintenance settlor's right to later seek modification of maintenance is not foreclosed." *Id.* at 42.

In light of the statutory lacuna uncovered in *Bowman*, however, and as current statutory law neither forbids nor permits the modification of a maintenance provision predicated upon the parties' agreement, we believe that a new look at this question is in order.

It is undisputed that the provision at issue is for maintenance, not for the division of property. However, the distinction made in our statutes between property division and maintenance may be an appropriate starting point, in that a property division is not subject to subsequent modification by the court "except as the agreement itself may prescribe or the parties may subsequently consent." I.C. § 31–1–11.5–10(b). Property division orders may only otherwise be revoked or modified in case of fraud. I.C. § 31–1–11.5–17(b). As noted by the court in *Dusenberry v. Dusenberry* (1993), Ind.App., 625 N.E.2d 458:

"A strong policy favors the finality of marital property divisions, whether the court approves the terms of a settlement agreement reached by the parties under Indiana Code § 31–1–11.5–10 or the court divides the property under Indiana Code § 31–1–11.5–11. One purpose of this policy is to eliminate vexatious litigation which often accompanies the dissolution of a mar-

riage. *Lankenau v. Lankenau* (1977), 174 Ind.App. 45, 49, 365 N.E.2d 1241, 1244. When marital property is divided, both assets and liabilities must be considered. *Finley v. Finley* (1981), Ind.App., 422 N.E.2d 289, 295, *trans. denied.* Thus, a partial modification of a property settlement agreement will likely upset the division of property equation in the Decree. The adjustment of one asset or liability may require the adjustment of another to avoid an inequitable result or may require the reconsideration of the entire division of property."

*Dusenberry,* 625 NE.2d at 461.

When periodic payments are provided for in a dissolution decree, such payments have been generally determined to be maintenance rather than property division when the following factors were present: (1) a specific designation as "maintenance"; (2) provisions for termination of payments upon the death of either the wife or the husband; or (3) the installments are to be made from future income. *Pfenninger,* 463 N.E.2d at 1119. A property division is indicated by (1) a provision for interest that is characteristic of installment cash awards of marital property; (2) an amount that does not exceed the value of the marital assets; or (3) payments for an amount certain not terminable upon death or remarriage of the recipient. *Id.* at 1119–20.

The policies underlying the nonmodification of property settlements except upon a showing of fraud are clear. When specific property or amounts of money are agreed to be transferred or accepted by the parties, a bargain has been concluded based upon the parties' assets. A future change of circumstances should not be permitted to alter that bargain, unless under principles of contract law. "Parties are free to divide their property in any way they choose and their agreement in that regard is interpreted as any other contract. Where the intentions of the parties can be clearly ascertained by the language employed in a contract, courts will recognize and enforce that agreement." *Myers,* 560 N.E.2d at 44.

A maintenance provision, however, whether or not premised upon an agreement, should be flexible enough to accommodate its sole purpose, which is the support of the receiving spouse, *Hicks v. Fielman* (1981), Ind.App., 421 N.E.2d 716, 721, without precluding the possibility that changed circumstances may eliminate the need for maintenance. "The legislative scheme for awarding maintenance strongly suggests that the purpose of maintenance is to continue the support of a spouse past the dissolution of the marriage." *Id.* at 720. It is logical, therefore, that unless the amount of maintenance is to be considered a part of the property division to which the recipient was contractually entitled or unless there is a specific agreement to the contrary, the burden on the payer of maintenance should be lifted or ameliorated upon a showing of a change of conditions so substantial and continuing as to make the terms of the agreement as to maintenance unreasonable, such as when the recipient's need has terminated or significantly abated or when the maintenance payer's financial situation changes significantly. Likewise, the recipient of maintenance should be entitled to petition the court for a modification to increase the amount of maintenance where a substantial change of circumstances is shown.

■ Accordingly, we agree with the court in *Pfenninger,* and we hold that unless the parties specifically agree to the contrary, a maintenance award reached by agreement is subject to modification by the court.

### II

Janet argues that even if the maintenance provision were subject to modification, David failed to present any evidence sufficient to show a change of conditions so substantial and continuing as to make the terms of the agreement as to maintenance unreasonable, as required under I.C. § 31–1–11.5–17(a). The thrust of Janet's argument is that the court's decision was erroneous in that it was based entirely on the fact that she had remarried. David argues in response that sufficient evidence was presented other than Janet's remarriage, specifically Janet's testimony that she had not gone to any rehabilitative sessions or classes since the award of maintenance and the testimony of Janet's new husband that, although he had lost his

former job, he had enough money from other sources to see them through the next several months.

Our standard of review was stated by the court in *Myers, supra:*

"Trial courts are vested with broad discretion in this area. *In re Marriage of Dillman* (1985), Ind.App., 478 N.E.2d 86, 87. Discretion is a privilege afforded a trial court to act in accord with what is fair and equitable in each case. *Id.* We will reverse only for abuse of that discretion. *Temple v. Temple* (1975), 164 Ind.App. 215, 328 N.E.2d 227, 230.

One of the strongest presumptions on appeal is that the trial court acted correctly. *Id.* However, abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Dillman, supra,* at 87. An abuse of discretion will also be found when the trial court has misinterpreted the law or when the trial court disregards evidence of factors listed in the controlling statute. *Dillman, supra,* 87–89."

*Myers,* 560 N.E.2d at 42.

In *Myers,* the supreme court affirmed the denial of a petition for modification where (1) the maintenance recipient, Beverly, was cohabiting with her boyfriend, a doctor with a six-figure income, (2) the doctor provided her with support, (3) Beverly married the doctor, who paid $70,000 down on a home for them, and (4) Beverly assisted in the support of her parents and her daughter. *Id.* at 43. The court held that these facts do not establish a substantial and continuing change in circumstances because

"[t]he amount of additional support Beverly's new companion provided her was not established nor was the nature of the services Beverly rendered him in consideration for that additional support shown. Duane [Beverly's ex-husband] only established Beverly was cohabiting with her boyfriend. Absent proof Beverly's cohabitation before her remarriage substantially changed her financial condition, the maintenance provisions cannot be modified." *Id.*

■ In determining whether a substantial change of circumstances has occurred that renders the original award unreasonable, a trial court should consider the factors underlying the original award, including the financial resources of the party seeking to continue the maintenance, the standard of living established in the marriage, the duration of the marriage, and the ability of the spouse from whom the maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance. *Farthing,* 382 N.E.2d at 945 (citing *Temple, supra* ).

■ In the present case, Janet's verified application for a provisional order in regards to child custody, child support and maintenance, filed with her petition for dissolution, states that she was unemployed and unemployable because she is legally blind due to glaucoma and other optical problems. In addition, Janet was the primary caretaker of the couple's two infant children.

The supplemental record, which presents excerpts from the modification hearing, shows Janet in circumstances that do not seem significantly improved, despite her remarriage. Janet's new husband, a district manager for a pharmacy chain, testified that he had been laid off as of July 31, 1992, that he was paid enough in bonuses to last to the end of the year, and that he was actively seeking employment in his field. Janet's own employment situation had not changed, and she testified that they had been living on her husband's unemployment compensation and her maintenance.

■ We conclude that these facts do not show a substantial and continuing change in the circumstances that renders the original maintenance award unreasonable. David has not met his burden of showing that Janet's circumstances have changed significantly. The amount of Janet's husband's earnings was not presented as evidence, nor the amount of his bonuses or other assets. Janet was questioned concerning the lack of progress in her rehabilitation, but the maintenance provision in the dissolution decree, al-

though denominated "rehabilitative mainte-nance," does not condition the payment of maintenance on achieving rehabilitative goals of any kind. The court in *Myers* held that cohabitation is not enough to establish a sub-stantial change in circumstances. *Myers,* 560 N.E.2d at 43. Nor is remarriage, stand-ing alone, sufficient in our view. "The extent of actual economic dependency, not one's conduct as a cohabitant, must determine the duration [of maintenance] as well as its amount." *Id.*

Accordingly, we conclude that the trial court abused its discretion in modifying the maintenance order to terminate it as of De-cember, 1993.

The trial court's entry of September 27, 1993, granting David's petition to modify is therefore reversed as to the provision modi-fying the maintenance order.

REVERSED.

BARTEAU and RILEY, JJ., concur.