**Grace B. LOWES, Appellant–Respondent,**

v.

**Edward J. LOWES, Appellee–Petitioner.**

**No. 67A01–9411–CV–362.**

Court of Appeals of Indiana,
First District.

May 25, 1995.

Delbert H. Brewer, Greencastle, for appellant.

Bruce D. Brattain, Brattain, Minnix & Young, Indianapolis, for appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

In this appeal we consider the relationship between a spousal maintenance obligation under the Dissolution of Marriage Act and an incapacitated spouse's eligibility for Medicaid. Grace B. Lowes appeals from the trial court's order terminating the obligation of her former husband, Edward J. Lowes, to provide spousal maintenance.

We reverse and remand.

### ISSUE

The issue presented is whether the trial court abused its discretion when it terminated all spousal maintenance based upon a finding that, without such maintenance, the disabled spouse could qualify for Medicaid.

### FACTS

Grace and Edward were married on October 1, 1966. There were two children born of the marriage. During the last 11 years of the marriage, Grace suffered from multiple sclerosis and became totally disabled as a result of the disease. The parties separated in early 1985, and the 19–year marriage of the parties was dissolved on January 29, 1986.

The parties reached a settlement agreement which was incorporated into the dissolution decree. The agreement provided in pertinent part:

10. That the Respondent is physically and mentally incapacitated to the extent that she cannot support herself and it is necessary for the Petitioner to provide for her continued maintenance in accordance with the provisions of IC 31–1–11.5–11(e)(1), subject to the further order of the court.

Record at 6. Accordingly, the agreement required Edward to make spousal maintenance payments to Grace in the amount of $100.00 per week. The agreement also provided that Edward would be responsible for all of Grace's uninsured medical expenses. At the time of dissolution, Grace was eligible for Medicare, and she continued to be insured under a policy provided by Edward's employer.

On December 31, 1993, Edward's employer changed health insurance providers which resulted in the termination of the private health insurance which had previously covered most of Grace's medical expenses. Due to the loss of coverage, Edward filed his petition to modify the decree of dissolution. After a hearing, the trial court entered findings which read in pertinent part as follows:

3. The respondent suffers from multiple sclerosis, was incapacitated at the time of the entry of the Decree of Dissolution and her incapacity continues at this time.

\*   \*   \*   \*   \*   \*

7. The termination of health care coverage which covered the Respondent constitutes a substantial and continuing change in the circumstances of the parties which warrants a change in the maintenance obligations of the Petitioner. The Dissolution Decree is subject to modification even though it was entered into by agreement of the parties.

8. The Respondent currently receives Medicare benefits which provide for approximately 80% of her medical needs. The Respondent's medical needs vary from approximately $10,000 to as much as $14,000 per year.

9. Medicaid benefits are also available in Missouri, where the Respondent resides with her mother, and it provides 100% coverage for the medical needs of qualified applicants.

10. The Respondent would be eligible for Medicaid coverage if her income was below $446.00 per month and her assets were valued at less than $1,000.00.

11. The Respondent's current income is approximately $1,047 per month and her assets are valued at approximately $44,575.

12. If the Respondent's guardian or attorney-in-fact pursued what is commonly known as a "spend down" of Respondent's assets the Respondent could meet the asset and income requirements and admittance into the Medicaid program.

13. If the Petitioner's maintenance obligation was terminated the Respondent's income would drop to approximately $617 per month, thereby minimizing the amount of spend down required to meet the Medicaid income requirement.

14. The Petitioner will be unable to continue to meet the financial obligations currently imposed by the Dissolution Decree if the decree is not modified at this time.

\*   \*   \*   \*   \*   \*

16. Based upon a review of the totality of the circumstances of the parties, the Court finds that it is fair and equitable to terminate the maintenance obligations of the Petitioner *because the Respondent has the present ability to take appropriate steps to qualify for Medicaid coverage.*

Record at 14–16 (emphasis added) (citations omitted). The trial court then entered its order terminating Edward's spousal maintenance obligation.

## DISCUSSION AND DECISION

### Standard of Review

■ A trial court has broad discretion to modify a spousal maintenance award, and we will reverse only upon an abuse of that discretion. *Myers v. Myers* (1990), Ind., 560 N.E.2d 39, 42. An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* An abuse of discretion will also be found when the trial court has misinterpreted the law or when the trial court disregards evidence of factors listed in the controlling statute. *Id.*

### Modification of Spousal Maintenance

■ Pursuant to the settlement agreement the trial court awarded spousal maintenance to Grace. A provision for maintenance is subject to modification whether it is based upon the decree of the court or upon an agreement of the parties. *Roberts v. Roberts* (1994), Ind.App., 644 N.E.2d 173, 177. The burden is on the party moving for modification to show "changed circumstances so substantial and continuing" as to make the previous maintenance order unreasonable. IND. CODE § 31–1–11.5–17(a); *see Baker v. Baker* (1990), Ind.App., 552 N.E.2d 525, 528, *trans. denied.*

■ In determining whether a substantial change of circumstances has occurred which renders the original award of maintenance unreasonable, a trial court should consider the factors underlying the original award. *Roberts*, 644 N.E.2d at 178. Those factors include the financial resources of the party seeking to continue the maintenance, the standard of living established in the marriage, the duration of the marriage, and the ability of the spouse from whom the maintenance is sought to meet his or her needs while meeting those of the other spouse seeking maintenance. *Id.*

■ Here, the underlying medical and economic circumstances which supported the original maintenance award remained essentially unchanged. Grace continued to be totally and permanently incapacitated due to multiple sclerosis. Edward continued to be gainfully employed, and while his salary increases over the years were not substantial, his earnings had steadily increased since the original decree. Further, in the original decree Edward was awarded custody of the parties' twin sons, but at the time of the hearing on the petition to modify the sons were 24–years old and emancipated.

Edward's petition to modify was prompted by one event, the loss of his employer-provided health insurance coverage for Grace. The trial court found, and we agree, that the termination of that coverage constituted a substantial and continuing change in circumstances which warranted modification of Edward's maintenance obligation. While Grace receives Medicare coverage for approximately 80% of her medical costs, under the original decree 20% of those costs remained Edward's responsibility. In considering modification, the trial court concluded that due to the loss of coverage, Edward would be unable to continue to meet his obligation to pay Grace's uninsured medical expenses. The court determined that if Edward's maintenance obligation were terminated completely, Medicaid benefits could be available to Grace

that would provide 100% coverage for all of her medical needs.

Nevertheless, Grace argues that the loss of health insurance, in itself, was insufficient to show a change in circumstances so substantial and continuing as to justify the termination of all spousal maintenance. Specifically, Grace asserts that the court abused its discretion when it based its decision upon the fact that if maintenance were terminated rather than simply modified, she could qualify for public assistance in the form of Medicaid.

### Medicaid

The purpose of the Medicaid program is to provide medical assistance to needy persons whose income and resources are insufficient to meet the expenses of health care. *See* 42 U.S.C. § 1396 *et seq.; Harris v. McRae* (1980), 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784, 794. States participating in the Medicaid program must establish "reasonable standards ... for determining eligibility for and the extent of medical assistance under the plan...." 42 U.S.C. § 1396a(a)(17).

To be eligible for Medicaid in Missouri, where Grace resides, an individual cannot exceed a minimum monthly income and cannot have total assets valued at more than $1,000.00. *See* Mo.Rev.Stat. § 208.010.2(4) (1986). At the time of the modification hearing, the trial court found that Grace had a monthly income of $1,047.00 and assets valued at approximately $44,575.00. The court determined that if Grace followed a procedure commonly referred to as a "spend down"[1] of her assets, she could become eligible for Medicaid in Missouri. Record at 15. The court further determined it was necessary to terminate Edward's weekly maintenance payments so that Grace's monthly income would decline and would not exceed Missouri's maximum income limitation for Medicaid. Accordingly, the trial court terminated Edward's spousal maintenance obli-

gation in order to accelerate Grace's Medicaid eligibility.

State Medicaid programs must be consistent with the federal policy of the Medicaid Act. All states that elect to participate in Medicaid are subject to federal statutory requirements and the regulations promulgated by the Secretary of Health and Human Services. *See* 42 U.S.C. § 1396a. Congress has provided that as a condition of eligibility for Medicaid an applicant is required to assist the state by assigning to it any legal rights he or she may have to support and payment for medical care from any third party. 42 U.S.C. § 1396k(a)(1)(A). Further, in order to receive federal funds to administer its Medicaid program, a state must "take all reasonable measures to ascertain the legal liability of third parties to pay for care and services...." 42 U.S.C. § 1396a(a)(25). In sum, Congress intended that all third party sources of income to which an applicant is entitled be exhausted before resort to the social welfare system.

Thus, the Missouri legislature has specifically provided that its state program is not intended to replace other means of assistance for needy persons. *Missouri Div. of Family Serv. v. Wilson* (1993), Mo.Ct.App., 849 S.W.2d 104, 106. Missouri has expressed its policy on this issue as follows:

> The benefits available under these sections *shall not replace* those provided under other federal or state law or under other *contractual or legal entitlements* of the person receiving them, and all persons *shall be required to apply for and utilize all benefits available to them and to pursue all causes of action to which they are entitled.*

Mo.Rev.Stat. § 208.153.1 (Supp.1990) (emphases added). In implementing federal Medicaid requirements, Missouri has determined that individuals entitled to any alternative source of income shall pursue the collection of that income regardless of its adverse effect on Medicaid eligibility.

---

1. Resource spend down is a method by which a Medicaid applicant, whose assets exceed the maximum allowable resource level, may remove the disqualification which otherwise would preclude Medicaid eligibility. *See Indiana Dept. of Public Welfare v. Payne* (1993), Ind., 622 N.E.2d 461, 463 n. 1. (Indiana requires applicant meet SSI threshold resource eligibility as prerequisite to utilization of spend down). In general, an individual exercising resource spend down would apply her excess resources against her incurred medical expenses. *Id.*

While Indiana Medicaid is not at issue here, the trial court's order frustrates the policy of the federal Medicaid scheme and, hence, the policy of both the Missouri and Indiana Medicaid programs.[2] The termination order eliminates otherwise available resources to which Grace is legally entitled and prematurely shifts the entire financial burden to taxpayers. This result violates the underlying policy of the Medicaid Act.

Under these circumstances, we believe the trial court abused its discretion when it terminated Edward's spousal maintenance obligation so that Grace could qualify for Medicaid. *See Eichenholz v. Eichenholz* (1987), Minn.Ct.App., 407 N.W.2d 699, 702 (fact that obligee spouse might receive more money for medical care under welfare rules if spousal maintenance was decreased would not justify such a decrease and would seemingly violate public policy). The clear intent of the trial court's termination order was to compel a spend down of assets and reduction of income. The effect of the order was not only to relieve Edward of all responsibility for spousal maintenance but to force Grace into poverty and to shift Edward's entire responsibility to the social welfare system.

Edward's loss of insurance coverage for Grace constituted a change in circumstances sufficient to warrant modification of the original maintenance order. Indeed, a modification of the original order would require Grace to utilize her own resources to meet her uninsured medical costs and, over a period of time, Grace may well become eligible for Medicaid. By applying both Grace's resources and Edward's spousal maintenance, a gradual spend down will likely occur, and third party liability will be fully utilized. When these combined resources are no longer sufficient to pay for Grace's uninsured medical expenses, spousal maintenance will have served its purpose, and Medicaid may then be the only reasonable alternative. In this manner, our Dissolution of Marriage Act

and federal and state health care policy can be reconciled.

■■■■ Thus, we cannot sanction an immediate termination of all spousal maintenance and a court-ordered spend down merely to accelerate Medicaid eligibility. A former spouse should not be relieved entirely of his maintenance obligation only to qualify the disabled spouse for Medicaid, any more than a noncustodial parent should be relieved of his child support obligation to qualify the custodial parent for Aid to Families with Dependent Children ("AFDC"). *Cf. Sullivan v. Stroop* (1990), 496 U.S. 478, 483–84, 110 S.Ct. 2499, 2503–04, 110 L.Ed.2d 438, 445 (in establishing both AFDC and Child Support programs in Social Security Act, Congress intended for programs to operate together to provide uniform levels of support for children through enforcement of support obligations owed by absent parents). Without any other change in circumstances, the total elimination of Edward's spousal maintenance obligation violates federal and state health care policy.

### Conclusion

We conclude, as a matter of law, that the trial court erred when it terminated Edward's entire spousal maintenance obligation to compel Grace to spend down her assets and accelerate her Medicaid eligibility. We agree that the loss of private insurance coverage constituted a sufficient change in circumstances to warrant modification of the original order, which required that Edward pay all of Grace's uninsured medical expenses. However, there was no evidence of changed circumstances which would support termination of Edward's $100 weekly maintenance obligation, or which would preclude Edward from continuing to pay a reasonable amount of uninsured medical expenses comparable to the amount he has paid since the original decree was entered. The trial court's order terminating all spousal maintenance is reversed, and this case is remanded

---

**2.** We note the unique circumstances presented by this case in which an Indiana trial court's order, in effect, shifts the entire financial obligation for Grace's care to Missouri Medicaid and the taxpayers of the state of Missouri. However, in light of the broad federal policies which affect all state Medicaid programs, our decision would be the same if the Indiana Medicaid scheme were at issue.

for proceedings not inconsistent with this opinion.

Reversed and remanded.

BAKER, J., and SHARPNACK, C.J., concur.