840 N.E.2d 385 (2006)
In re the MARRIAGE OF Katharine A. ERWIN and David K. Erwin
Katharine A. (Erwin) Seay, Appellant-Petitioner,
v.
David K. Erwin, Appellee-Respondent.
No. 84A05-0501-CV-53.
Court of Appeals of Indiana.
January 13, 2006.
*386 Robert D. Hepburn, Terre Haute, for Appellant.
Teri M. Lorenz, Hunt Hassler & Lorenz, LLP, Terre Haute, for Appellee.

OPINION
RILEY, Judge.

STATEMENT OF THE CASE
Appellant-Petitioner, Katharine A. Erwin Seay (Katharine), appeals the trial court's termination of spousal maintenance previously ordered to her as a result of her divorce from Appellee-Respondent, David K. Erwin (David).
We reverse.

ISSUE
Katharine presents one issue on appeal, which we restate as follows: Whether the trial court erred in granting David's Petition to Modify spousal maintenance by finding that a substantial change in circumstances has occurred since the dissolution decree was entered.

FACTS AND PROCEDURAL HISTORY
Katharine and David were married on May 18, 1984 and divorced on May 9, 2002. On May 9, 2002, the trial court entered, in part, the following findings of fact:
* * * * * *
5. [Katharine] is fifty-two (52) years of age and suffers from a bi-polar condition, for which she has received treatment, including counseling and medication, and will continue to require such counseling and medication in the future. She had previously been employed in the nursing profession, but in view of her bi-polar condition has not been so employed for a number of years.
6. According to the expert testimony, [Katharine], in the future, will no longer be able to practice her profession as a nurse, and her employability, in any position, will be at most sporadic, as she will experience exacerbations of her bi-polar condition on occasion. The stresses of employment make full-time work improbable for [Katharine] and she may be disabled to the extent of obtaining disability benefits.
7. Based upon Social Security records, [Katharine] during the course of the marriage earned $424,832 ... however, *387 for the last three (3) years of the marriage (1999-2001)[,] her income was $9,294.00, $2,814.00, $6,300.00, respectively. [Katharine's] future earnings will also be limited.
8. [David] is fifty (50) years of age and a tenured associate professor at Rose Hulman Institute of Technology.
9. Based upon Social Security records, [David] over the course of the marriage earned $872,671.00 (estimating his income for 2001 at $65,000.00). For the last three (3) years of the marriage (1999-2001)[,] his earnings were $66,048.00, $76,200.00, $65,000.00, respectively. [David] continues to be so employed, expects such income to continue, and anticipates that such income may increase substantially, should he be raised to the position of full professor.
10. [Katharine] will require significant medical and psychological care in the future, has no insurance program available to her through her employment and is likely uninsured at least to the extent of pre-existing conditions.
* * * * * *
29. Premised upon all the findings [herein], [Katharine] is physically or mentally incapacitated to the extent that her ability to support herself is materially [a]ffected.
(Appellant's Appendix, pp. 17-18, 21).
Then, on May 20, 2002, in a Nunc Pro Tunc Entry of Decree of Dissolution, the trial court, in part, ordered:
9. That [David] shall maintain and pay premiums for the continuation of his present health insurance plan covering [Katharine] through his employment, through the COBRA program for a period of thirty-six (36) months, provided however, that if [Katharine] shall be able to obtain comparable health insurance coverage through future employment during such period of time, [David's] obligation to maintain and pay such premiums shall terminate.
10. That [David] shall pay to [Katharine], maintenance in the amount of $700.00 per month, commencing on the first day of June, 2002, and on the first day of each month thereafter, for a period of eighty-four (84) months or until further Order of the Court. Provided however, that [Katharine] is ordered to apply for Social Security disability benefits, forthwith, upon the entry [of] this Decree of Dissolution, and on a periodic basis thereafter, and in the event that [Katharine] shall qualify for such benefits, [David's] maintenance obligation, as set forth herein, shall be reduced or illuminated [eliminated] to the extent that [Katharine] receives such benefits.
(Appellant's App. at 31-32).
On April 12, 2004, David filed a Petition to Modify, requesting reduction or termination of his spousal maintenance obligation to Katharine. On December 7, 2004, a hearing was held on the matter. As a result, on December 20, 2004, the trial court entered, in part, the following findings of fact and conclusions of law:

Findings of Fact
1. Since the parties' divorce on May 9, 2002, [Katharine] has been gainfully employed well more than she has been unemployed.
* * * * * *
4. [Katharine] lost her job at St. Vincent Clay Hospital at the end of May, 2004, because she was too slow in doing her "charting" and she was not able to remember procedures, after an *388 absence from the job, due to a reaction to medication.
5. [Katharine] is now employed at Elder Beerman, earning six dollars and seventy[-]five cents ($6.75) per hour and working thirty to thirty-five (30-35) hours per week.
6. [Katharine] is actively looking for a new job in nursing or, alternatively, seeking to obtain a second part-time job to supplement her income at Elder Beerman.
* * * * * *
8. [Katharine] has the ability to earn in excess of twenty dollars ($20) per hour, as evidenced by her employment with first[,] Ivy Tech[,] and secondly with St. Vincent Clay Hospital.
9. [Katharine] was required by the Court, under [its Decree of Dissolution] to apply for Social Security disability benefits upon the entry of the Final Decree and on a periodic basis thereafter. In response to the application which [Katharine] made, after the divorce, for Social Security disability benefits, the Administration found that she was not disabled under their rules, because, "we have determined that your condition is not severe enough to keep you from working" and "is treatable by medication, and you are currently stable." (January 16, 2003, Social Security Administration report)
10. While [Katharine] made a second application in 2004, it appears she applied for SSI and was turned down by the Administration, because she had earned (or received as maintenance payable by [David]) too much money in 2004 to be eligible.
11. [Katharine] prefers to be employed and does not wish to apply for or be eligible for Social Security disability benefits.
12. At no time, since the divorce, has [Katharine] applied for full-time employment.
13. [Katharine] believes that she can work in the nursing field, and hopes to obtain a nursing job in an area less stressful than a medical-surgical unit. [Katharine] is also qualified to work in retail, and seems to have little trouble getting a retail sales job.
14. As evidenced by her tax returns, [Katharine's] earned income, in 2003, was approximately eighteen thousand dollars ($18,000), even though she was only employed, part time, at Hallmark, from January through April, 2003.
15. [Katharine's] income in 2004 will exceed nineteen thousand dollars ($19,000), even though she was only employed, part time, at Hallmark, for four to six (4-6) weeks at the end of May and beginning of June, 2004.
16. [Katharine's] income has increased, each year, since the parties' divorce.
17. [Katharine's] mental health has stabilized or improved since the time of the divorce ....
18. [Katharine] is currently receiving unemployment compensation. Under [I.C.] [§ ] XX-X-XX-X(a), in order for an individual to be eligible to receive unemployment benefits, [] the individual:
a. [must be] physically and mentally able to work; and
b. [] found by the department to be making an effort to secure full-time work.
19. [Katharine] testified that, at such time as [David] is no longer required to pay COBRA medical insurance premiums for her, she will obtain a full-time *389 job or a part-time job with benefits.
* * * * * *
20. [Katharine's] budget, submitted to Momentive Debt Management [], indicates that she only needs sixteen hundred dollars ($1,600) per month to cover her expenses, which included expenses beyond "life's necessities."
Conclusions of Law
* * * * * *
1. Substantial and continuing changes in circumstances have occurred since this [c]ourt's order of May 9, 2002, justifying, under [I.C.] [§ ] XX-XX-X-X a termination of maintenance payments payable by [David] to [Katharine], as to make the previously ordered payments unreasonable.
* * * * * *
13. The [c]ourt does conclude, however, that a sudden and abrupt termination of all maintenance and insurance payments would be unfair. In order to give [Katharine] sufficient time to adjust her budget and income, maintenance and COBRA payments by [David] are to continue until May 9, 2005. Thereafter, no further maintenance will be required.
(Appellant's App. at 10-12, 14).
Katharine now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION
Katharine argues that the trial court erred in finding that a substantial change of circumstances has occurred since her divorce from David in 2002, and thus she contends that the trial court's termination of her spousal maintenance award was improper. Specifically, Katharine asserts that the trial court incorrectly found that her bi-polar condition had improved during the approximate thirty-month period following her divorce from David.
A trial court has broad discretion to modify a spousal maintenance award, and we will reverse only upon an abuse of that discretion. Lowes v. Lowes, 650 N.E.2d 1171, 1174 (Ind.Ct.App.1995). We will find an abuse of discretion only where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. Id. Also, a trial court abuses its discretion if it has misinterpreted the law or disregarded evidence of factors listed in the controlling statute. Id.
In this case, because Katharine requested that the trial court enter findings of fact and conclusions thereon pursuant to Trial Rule 52(A), we are prohibited from setting aside the trial court's findings "unless clearly erroneous." Augspurger v. Hudson, 802 N.E.2d 503, 508 (Ind.Ct.App. 2004). Upon review, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. Counceller v. Counceller, 810 N.E.2d 372, 377 (Ind.Ct. App.2004), trans. denied. In our review, we are to "give due regard to the opportunity of the trial court to judge the credibility of the witnesses." Augspurger, 802 N.E.2d at 508. Therefore, when reviewing the trial court's entry of findings, we neither reweigh the evidence nor reassess the credibility of the witnesses. Id. at 509. A trial court's findings of fact will be found clearly erroneous only when the record is devoid of evidence or reasonable inferences to support them. Counceller, 810 N.E.2d at 377.
*390 The circumstances under which a trial court may order spousal maintenance payments are limited. Zan v. Zan, 820 N.E.2d 1284, 1287 (Ind.Ct.App.2005). One circumstance, warranting what is referred to as "incapacity maintenance," is provided for in Indiana Code section 31-15-7-2(1). McCormick v. McCormick, 780 N.E.2d 1220, 1223 (Ind.Ct.App.2003). This provision allows a trial court to award maintenance to a spouse if it finds the spouse "to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support himself or herself is materially affected[.]" Id. Upon a finding of incapacity, the court may then find that maintenance for the spouse is necessary during the period of incapacity, subject to further order of the court. I.C. § 31-15-7-2(1).
Here, the trial court presiding over Katharine and David's divorce awarded incapacity maintenance to Katharine based upon its finding that her bi-polar condition materially affected her ability to support herself. Specifically, that court predicted that Katharine's future earnings would be limited in light of her unstable condition and its finding that she produced an annual income of no more than $9,294 during the last three years of the marriage. Subsequently, in the present action, David sought to modify or terminate the award based upon a required showing of "changed circumstances so substantial and continuing" that the terms of the maintenance order had become unreasonable. See I.C. § 31-16-8-1(1).
In support of his argument that a substantial change in circumstances had occurred, David presented evidence at the hearing on the Petition to Modify establishing that Katharine's gross income from salaries and wages in 2003 was more than $17,000, and that her income in 2004 was expected to be more than $19,000. Thus, David argued that the original trial court's finding that Katharine's future earnings would be limited was no longer true. Additionally, in support of his Petition to Modify, David sought to show that Katharine's bi-polar condition had improved by presenting evidence that she had not been hospitalized or attempted suicide between their divorce in May of 2002, and the modification hearing in December of 2004. The trial court particularly noted this evidence as support for its finding of fact that Katharine's condition had actually "stabilized or improved" since maintenance was originally ordered. (Appellant's App. at 11).
Thus, it is apparent from our review of the record that the trial court agreed with David, and determined that Katharine's increased earnings did constitute a substantial and continuing change in circumstances. Also, it is apparent from our assessment of the record that the trial court found a substantial and continuing change in Katharine's circumstances due to a decrease of, or absence of, at least since her divorce, of bi-polar exacerbations requiring hospitalization since her divorce.
Although we agree that the evidence supports the aforementioned findings, that Katharine's income is greater than the original trial court predicted and that she has not been hospitalized for bipolar disorder in more than two years, we do not agree with the trial court's finding that these changes are so substantial or continuing as to warrant complete termination of spousal maintenance at this time. See I.C. § 31-16-8-1(1). As we stated in Lowes, 650 N.E.2d at 1174, in determining whether a substantial change of circumstances has occurred to the point of making a maintenance award unreasonable, a trial court should consider the factors underlying the original award. Such factors include the financial resources of the party seeking to continue maintenance, the standard *391 of living established in the marriage, the duration of the marriage, and the ability of the spouse from whom the maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance. Id.
Here, it is apparent from the record that the primary factor underlying the original award of maintenance to Katharine was her affliction with bi-polar disorder and its resulting impact on her employability. In examining the record before us, we find that these circumstances have not substantially changed. Even though the evidence indicates that Katharine's bi-polar exacerbations have been less severe than prior to the divorce, nevertheless, the record clearly shows that she still suffers from the disease, continues to be under regular medical treatment for it, and has difficulty maintaining stable employment due to its effects.
In particular, we do not find evidence in the record to support the trial court's finding that Katharine has an ability "to earn in excess of twenty dollars ($20) per hour, as evidenced by her employment with first Ivy Tech and secondly with St. Vincent Clay Hospital." (Appellant's App. at 10). Rather, our own review of the record reveals that Katharine was unable to keep either her teaching position at Ivy Tech or her medical-surgical nursing position at St. Vincent Clay Hospital because she was stressed easily and performed poorly. Specifically, this court has a difficult time reconciling the trial court's optimistic attitude regarding Katharine's ability to obtain another nursing job in the future with its finding that Katharine lost her last nursing job "because she was too slow ... and she was not able to remember procedures." (Appellant's App. at 10). At the hearing, Paulette Sue Gaskill (Gaskill), nurse manager at St. Vincent Clay Hospital, testified:
[Gaskill]: [Katharine] was extremely slow on what she did. She was [thorough] but slow. She was forgetful. I mean she would say things like no body told me how to do this, but we had. But you know that everybody can be told the second time but it got [] past that.
* * * * * *
[Gaskill]: [Katharine] was on nights and I couldn't monitor her on nights so I told her her she had to go on days so we could keep a closer eye on her because I felt that patient safety was the first thing we needed to be concerned about, but yet, I was really wanting to give her the opportunity to show me she could handle the job, but she just couldn't do it.
(Transcript pp. 103, 104.) Further, the evidence reveals that although Katharine was on record as an employee at St. Vincent Clay Hospital for nearly a year, she rarely worked during the last six months of that period. The record also shows that Katharine required a five-week leave of absence from her nursing position due to an exacerbation of her bipolar disorder. Thus, we continue to find merit in the original court's prediction that Katharine's employability is sporadic, and the stresses of employment make adequate full-time work an unlikely option for her.
We also fail to find sufficient evidence to support the trial court's finding that Katharine's "mental health has stabilized or improved" to a degree justifying termination of her maintenance award. (Appellant's App. at 11). At the hearing, the following colloquy took place between Katharine's counsel and Katharine's psychiatrist, Dr. William Shriner (Dr. Shriner):
[Katharine's counsel]: .... From the time of the divorce until now, would you say that she's been on an even keel or would you say that you have to *392 constantly [sic] monitor her, monitor her medications, change those, increase this, decrease that, try to stabilize her mood and disorder?
[Dr. Shriner]: I don't recall [Katharine] ever being on an even keel. She is on kind of a roller coaster ride pretty much all the time. She does have periods where she is feeling fairly good, fair function, but then the next hour or [day] can go down hill.... we've made constant adjustments and reassessments [] in the medication over the years.
(Tr. pp. 53). Therefore, Dr. Shriner's testimony, along with other evidence in the record, supports our conclusion that the trial court's findings related to Katharine's bi-polar condition and earning capacity are clearly erroneous.
Moreover, even though Katharine testified that her condition has improved and that she is continuing to pursue work in the nursing field, we reiterate that there is little evidence to suggest that such employment is likely in her immediate future. Under Indiana law, the maintenance statute requires the trial court "to realistically appraise a spouse's employment opportunities, keeping in mind both the type and degree of spouse's incapacity and the spouse's present skills and experience." McCormick, 780 N.E.2d at 1225. Here, the fact that Katharine has been able to work part-time as a retail sales clerk since losing her nursing job does not mean that she has the ability to work full time in another position that is more demanding. See id. Furthermore, this court has previously held that although a spouse may be able to perform some job or is even currently employed, maintenance is not necessarily inappropriate. McCormick, 780 N.E.2d at 1225 (quoting In re Marriage of Dillman, 478 N.E.2d 86, 88 (Ind.Ct.App. 1985)).
In McCormick, this court found that a spouse incapacitated by multiple sclerosis should continue to receive maintenance during times of unemployment, even though her medical condition had slightly improved since the divorce proceedings. McCormick, 780 N.E.2d at 1225, 1222. Also, the McCormick court ordered that maintenance payments cease during times when the incapacitated spouse was able to hold a full-time job that provided the necessary means to support herself. Id. at 1224-25. Here, however, the trial court ceased spousal maintenance at the same time Katharine's COBRA health insurance coverage ceased, and before there was ample evidence to support an inference that Katharine would be able to find or maintain full-time work. Consequently, we find that that the trial court's actions in the present case go against our holding in McCormick. We still note, as in McCormick, that if Katharine is ever able to find stable, full-time employment that meets her needs, termination of her maintenance order may then be appropriate.
In summary, we find that the factors underlying the original award of maintenance  Katharine's bi-polar condition and her inability to maintain stable employment  remain unchanged. Additionally, we note that Katharine and David were married for a significant length of time, seventeen years, and that the record indicates that David's financial ability to meet a maintenance obligation is not at issue. See Lowes, 650 N.E.2d at 1174. Therefore, under the circumstances in the record before us, we conclude that complete termination of Katharine's maintenance payments at this time was an abuse of discretion by the trial court. Id.

CONCLUSION
Based on the foregoing, we find that the evidence does not fully support the trial *393 court's findings in this case, and consequently the findings do not support the judgment. Therefore, we conclude that the trial court abused its discretion in terminating spousal maintenance under this particular set of circumstances.
Reversed.
MATHIAS, J., concurs.
BAKER, J., dissents with opinion.
BAKER, Judge, dissenting.
I respectfully dissent from the majority opinion. As the majority noted, the only changed circumstances at issue are Katharine's income and her bi-polar disorder. The evidence established that Katharine had earned more than $17,000 in 2003 and was expected to earn more than $19,000 in 2004. But the evidence also showed that Katharine had also lost her full-time jobs at Ivy Tech and St. Vincent Clay Hospital for her errors in judgment and patient care mistakes, and she had been unable to maintain anything other than part-time employment since that time. The evidence also demonstrated that Katharine's depression, suicide attempts, and hospitalizations for her bi-polar disorder had decreased since her divorce. But her psychiatrist testified that Katharine has never been on an even keel.
This is, admittedly, a very close call for a trial court to make. While we may not have made the same decision were we sitting on the trial bench, our standard of review requires us to defer to the trial court unless its decision is clearly against the logic and effect of the facts and circumstances before it or the reasonable inferences drawn therefrom. Lowes v. Lowes, 650 N.E.2d 1171, 1174 (Ind.Ct.App. 1995). The trial court did the best it could with the facts and inferences before it by continuing Katharine's maintenance payments for five months so that she could prepare herself for the change. I cannot say that the trial court abused its discretion in doing so, and I vote to affirm its judgment.