## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 21 2017, 9:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Paul E. Baylor
Anderson, Indiana

ATTORNEY FOR APPELLEE

David W. Stone
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert Schuyler,<br><br>*Appellant-Respondent,*<br><br>v.<br><br>Donna Schuyler,<br><br>*Appellee-Petitioner.* | February 21, 2017<br><br>Court of Appeals Cause No.<br>48A02-1603-DR-627<br><br>Appeal from the Madison Circuit Court<br><br>The Honorable G. George Pancol, Judge<br><br>Trial Court Cause No. 48D02-0906-DR-519 |

**Riley, Judge.**

# STATEMENT OF THE CASE

[1] Appellant-Petitioner, Robert Schuyler (Robert), appeals the trial court's order denying his petition to terminate his spousal maintenance obligation to the Appellee–Respondent, Donna Schuyler (Donna).

[2] We affirm.

# ISSUE

[3] Robert raises one issue on appeal, which we restate as: Whether the trial court abused its discretion by not terminating his spousal maintenance obligation.

# FACTS AND PROCEDURAL HISTORY

[4] Robert and Donna were married for several years, and on June 13, 2011, they dissolved their marriage. No children were born to the marriage. At the time of the parties' divorce, Donna suffered from several illnesses including; Crohn's disease, Barret's Esophagus, GERD, sensitive bladder, spells of dizziness, depression, and anxiety. In the order dissolving the marriage, the trial court determined that Donna's health problems materially affected her ability to support herself, and it ordered Robert to pay Donna spousal maintenance of $175 per week beginning on June 17, 2011.

[5] On November 20, 2015, Robert filed a petition seeking to terminate the spousal maintenance order on grounds that Donna had become eligible for social security benefits and because he was newly married and had new responsibilities. A hearing was conducted on February 16, 2016. In support of

his petition, Robert introduced evidence that Donna was now receiving an annual income of $18,000 from her social security benefits, and was also working part-time at a daycare. No evidence was presented regarding a change in Donna's health issues. At the close of the evidence, the trial court took the matter under advisement. On February 25, 2016, the trial court issued an order, stating that there had been no substantial and continuing change to warrant the termination of the maintenance order.

[6] Robert now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[7] Robert argues that the trial court should have either terminated, or, at least, reduced the spousal support that he pays to Donna. We initially note that Robert's petition and relief sought during the modification hearing was limited to terminating his spousal maintenance obligation. To the extent that he now claims that the trial court should have reduced his obligation, we decline to address this argument as it was never raised before the trial court, but rather, is being presented for the first time on appeal. *See McKibben v. Hughes*, 23 N.E.3d 819, 828-29 (Ind. Ct. App. 2014) (an appellant who presents an issue for the first time on appeal waives the issue for purposes of an appellate review), *reh'g denied*.

[8] A trial court has broad discretion to modify a spousal maintenance award, and we will reverse only upon an abuse of that discretion. *In re Marriage of Erwin*, 840 N.E.2d 385, 389 (Ind. Ct. App. 2006). An abuse of discretion will be found

if the trial court's decision is clearly against the logic and effect of the facts or reasonable inferences to be drawn therefrom, if the trial court misinterprets the law, or if the trial court disregards evidence of factors in the controlling statute. *Lowes v. Lowes*, 650 N.E.2d 1171, 1174 (Ind. Ct. App. 1995). "The burden is on the party moving for modification to show changed circumstances so substantial and continuing as to make the previous maintenance order unreasonable." *Id*.

[9] In determining whether a substantial change of circumstances has occurred which renders the original award of maintenance unreasonable, a trial court should consider the factors underlying the original award. *Roberts v. Roberts*, 644 N.E.2d 173, 178 (Ind. Ct. App. 1994). Those factors include the financial resources of the party seeking to continue the maintenance, the standard of living established in the marriage, the duration of the marriage, and the ability of the spouse from whom the maintenance is sought to meet his or her needs while meeting those of the other spouse seeking maintenance. *Lowes*, 650 N.E.2d at 1174. In the instant case, in order to determine whether there has been a substantial and continuing change that would warrant termination of Robert's maintenance obligation, we must determine whether Donna's financial position has changed such that she is able to financially support herself. We conclude that it has not.

[10] In support of his petition to terminate the maintenance order issued in 2011, Robert introduced Exhibit 2 itemizing Donna's monthly income and monthly expenses, and without factoring his monthly spousal maintenance obligation.

That exhibit indicated Donna's gross income as $1,635.31, and her average take-home pay after deducting taxes and insurance as $1,498.84. Donna's monthly living expenses were then listed as follows:

| | |
|---|---|
| Rent | $740.00 |
| Food | $300.00 |
| Clothing | $100.00 |
| Utilities | $160.00 |
| Telephone | $135.00 |
| Insurance (life, auto) | $30.00 |
| Gasoline | $80.00 |
| Med 1 Solutions | $50.00 |
| Premiere Credit | $25.00 |
| Urology Assoc | $25.00 |
| Central IN Gastro | $68.00 |
| Indiana Dept. of Revenue | $76.37 |
| Medicine | $100.00 |
| License Plates | $5.85 |
| Cable | $80.00 |
| Trash pickup | $25.00 |
| Christmas presents | $41.66 |
| Birthday presents | $20.83 |
| Dry Cleaning/Laundry expenses | $60.00 |
| Total Expenses | $2,123.46 |
| | |
| Total Income | $1,498.84 |
| Total Expenses | $2,123.46 |
| | ($624.62) |

(Appellant's Exh. 2).

[11] In his appellate brief, Robert's arguments are centered on his belief that Donna is living an extravagant lifestyle. Robert argues that Donna has "made no attempt to receive Medicaid or Medicare, HUD, or any other government

assistance." (Appellant's Br. p. 5). Robert further claims that Donna has not made any "attempt to economize. She pays $135 just for cell phone. She spends $80 a month on cable." (Appellant's Br. p. 7). Robert also faults Donna for not applying for social security disability benefits based on her numerous health problems.

[12] Notwithstanding Robert's arguments on appeal, Robert did not provide any evidence at the modification hearing that the alleged government subsidized programs or assistance were available to Donna. Moreover, at the modification hearing, Donna explained that during the divorce proceedings, she was living rent-free with her sister and brother-in-law. At the time, her living expenses were low and she was able to survive with Robert's maintenance. However, after the divorce was finalized, and owing to her health problems, she moved to Plainfield and got an apartment that was fifteen minutes away from her daughter's house. Donna indicated that her lifestyle changed and her expenses increased after the move. Donna specified that her rent of $740 was reasonable based on her apartment's location. Further, Donna stated that in 2011, she had once applied for social security disability benefits in light of her health problems, was denied, and never reapplied. When questioned why she had not sought a $10 government phone, Donna testified that "I just always kept my phone." (Tr. p. 33). With respect to her health insurance cost, Donna stated that she had kept the same policy with Blue Cross Blue Shield Insurance for years and it never occurred to her to apply for "Obama Care." (Tr. p. 32).

[13] The standard of living established in the marriage, the duration of the marriage, and the ability of the spouse from whom the maintenance is sought to meet his or her needs while meeting those of the other spouse seeking maintenance, are pertinent factors in determining maintenance. *See Lowes*, 650 N.E.2d at 1174. As noted, Robert's weekly maintenance to Donna is $175 per week; thus, his monthly spousal obligation is $700. Even with her new income comprising of social security benefits and working part-time at a daycare, Donna is still unable to meet her monthly living expenses and has a shortfall of $624.62.

[14] In his appellate brief, Robert relies on *Pala v. Loubser*, 943 N.E.2d 400, 404 (Ind. Ct. App. 2011), where a former wife moved to terminate former husband's incapacity maintenance. On appeal, we affirmed the trial court's decision's to terminate the maintenance award by concluding that although former husband was an achondroplastic dwarf, there was evidence that former wife's income had decreased from about $200,000 a year at the time of the dissolution to less than $130,000 at the time of former wife's motion; former husband's social security benefits had increased; former husband at the time of the modification hearing had approximately $50,000 in his bank account; former husband's physical condition had improved by the time of the modification hearing; former husband had not seen a physician for two years; and former husband was capable of performing some physical labor. *Id*. at 405-407.

[15] Unlike the fact pattern in *Pala*, Donna has no such financial assets and her medical conditions have not changed since the time of the parties' divorce. During the divorce proceedings, Donna was unemployed and living rent-free

with her sister and brother-in-law; however, after the divorce was finalized, she relocated from Greenfield to Plainfield to be close to her daughter. Based on the move to Plainfield, Donna has incurred rental and other living expenses.

[16] We note that for a modification, it is enough to show changes are substantial and continuing to make the existing award unreasonably excessive or inadequate, and the opportunity remains open for future modifications. *See In re Marriage of Gertiser,* 45 N.E.3d 363, 369 (Ind. 2015). However, "because revoking an award means extinguishing it forever, it necessarily entails proving that the change is so substantial and continuing that the very existence of the award has become unreasonable—not only in the present, but under any reasonably foreseeable future circumstances as well." *Id.* Here, we conclude that it would not be unreasonable to continue the spousal maintenance order. When the maintenance order was entered, Robert was residing with his father, paying $200 in rent, and his annual salary was about $65,000. It is undeniable that Robert continues to be financially able to make the maintenance payments to Donna, and although his annual income has slightly increased since the parties' divorce, it not a substantial decrease. As for Donna's financial position, Donna's annual income from her social security benefits, and working part-time at a daycare amounted to approximately $18,000. Donna's medical issues have not changed since the parties' divorce and they continue to limit her ability to work full time.

[17] Even though Donna now receives an income, those funds are insufficient to support her needs each month. As we stated above, the standard of living

established in the marriage, and the ability of the spouse from whom the maintenance is sought to meet his or her needs while meeting those of the other spouse seeking maintenance, are relevant factors in determining maintenance. *See Lowes*, 650 N.E.2d at 1174. While we empathize with Robert's claims that his living expenses have gone up after marrying again, we must conclude that in order for Donna to continue living the lifestyle to which she was accustomed during the marriage, and also considering that Donna is still incapacitated due to her health problems, maintenance from Robert is still required. Accordingly, based upon our review of the record, we cannot say that the evidence leaves us with the firm conviction that a mistake has been made or that the trial court's decision is clearly against the logic and effect of the facts and circumstances before it.

# CONCLUSION

[18] In light of the foregoing, we conclude that the trial court was within its discretion by not terminating Robert's spousal maintenance obligation.

[19] Affirmed.

[20] Crone, J. and Altice, J. concur