**David P. PFENNINGER,**
**Respondent-Appellant,**

v.

**Brenda J. PFENNINGER,**
**Petitioner-Appellee.**

**No. 1–983A286.**

Court of Appeals of Indiana,
First District.

May 29, 1984.

Linda Stemmer, Union City, for respondent-appellant.

Charles T. Gleason, Sue T. Mac Gill, Wood, Tuohy, Gleason, Mercer & Herrin, Indianapolis, for petitioner-appellee.

RATLIFF, Judge.

### STATEMENT OF THE CASE

David P. Pfenninger (David) appeals the judgment of the Henry Superior Court granting Brenda J. Pfenninger's (Brenda) motion to dismiss his petition for relief from judgment pursuant to Indiana Rules of Procedure, Trial Rule 60(B)(7)[1] and his petition to modify an order for maintenance in the decree of dissolution of marriage because of changed conditions. We reverse and remand for further proceedings.

### FACTS

David and Brenda were married in 1959, and had four children. Their marriage was dissolved by decree entered March 18, 1981. The decree granted Brenda the right to live in the parties' residence, ordered David to pay mortgage payments and one-third of the cost of major repairs. Brenda was ordered to pay taxes, insurance, and normal repairs and maintenance charges. If at any time Brenda elected to sell the residence, she was to receive two-thirds of the net proceeds of sale, and David was to receive the remaining one-third. The decree then awarded the furniture, personal property, and motor vehicles of the parties to them in the manner specified, gave Brenda $3200 from their savings account, ordered her to pay a $4000 debt to her mother, and ordered husband to pay any and all judgments, costs of litigation, and tax liabilities resulting from his prior business dealings. The decree then contained the following provision which is the subject of this controversy:

### "PERIODIC AND SEPARATE MAINTENANCE PAYMENTS

1. Husband shall pay to wife the sum of $432 per week for a period of 1040

---

1. Because we hold the court erred in refusing to consider David's petition to modify the maintenance order and reverse and remand for further proceedings on that issue, we find it unnecessary to determine any issue as to his T.R. 60(B)(7) petition.

weeks commencing on the 18 day of March, 1981, and continuing on each Wednesday thereafter until paid. In the event of wife's death, husband agrees to continue to make said payments until a total of 693 such payments have been made, but such payments after wife's death shall be made payable to the Trustee of a Trust Agreement created for the benefit of the children of the parties, a copy of said Trust Agreement is attached hereto and made a part hereof and is marked as Exhibit A.

The parties agree that husband's obligation to make the aforementioned payments shall not cease upon the remarriage of the wife.

The parties agree, however, that in the event of the death of the husband, the obligation to make such payments shall cease, subject to wife receiving the proceeds of a life insurance policy on the life of husband being Policy # N3782058 in the amount of $100,000 with Aetna Life Insurance Company or any replacement policy as hereinafter provided. Husband agrees that he will maintain said life insurance policy in full force and effect for the term of this agreement or until the date of his death whichever shall first occur and that wife shall be the beneficiary and owner of said policy. Husband agrees to make all premium payments on said policy or any replacement policy as hereinafter provided. The existing policy is a one year renewable term and the parties recognize that the policy number may change from year to year, but husband agrees that he will renew said policy or purchase a new policy each year for the term of this agreement. Husband agrees to maintain said policy in the amount of $100,000. Husband acknowledges that the current policy is a term policy that is guaranteed renewable and convertible and that the premium for said policy shall increase each year. Wife agrees that husband can convert said policy for a permanent insurance policy subject to the same con-ditions above set forth for the present policy. If husband does convert said policy, he agrees that he shall not borrow from the cash value or to use said cash value for collateral. Husband further agrees that in the event he shall convert the current policy he shall not elect to cash in said policy or draw any monthly benefits from said policy until the expiration of the 1560 weeks above set forth. Husband further agrees that wife shall be the owner of and beneficiary of said policy for the time above specified. Upon termination of this agreement, wife shall sign ownership of the policy back to husband. Husband shall furnish wife proof of payment of the premiums due for the current policy or any replacement policy or any subsequent policy in the event of conversion of the present policy. Husband further agrees to sign any papers necessary to effectuate the foregoing. In the event husband shall fail to make the payments on said policy or any replacement or subsequent policy, wife can make said payments and husband shall be obligated to pay wife for such payments, plus interest at the rate of Ten percent (10%) per annum plus reasonable attorney fees and costs of collection incurred by wife to collect said payments."

Record at 44–46.

Originally, the parties agreed that David would pay $288.00 per week for 1560 weeks. This provision was changed on the morning of trial at David's insistence. The increased weekly payment for the shorter duration amounts to the same total payment.[2] In addition to the $432 weekly payments, David was required to pay $62 weekly child support.

On cross-examination Brenda testified concerning how the amount of the weekly payments was determined. Relevant portions of that testimony are as follows:

"Q. I'm asking you, you've talked about what your intentions were, what were your intentions at the time, how was a

---

**2.** $432 × 1040 = $449,280.

$288 × 1560 = $449,280.

figure of four hundred and thirty-two dollars ($432.00) arrived at?

A. I sat down with a calculator went over the check book of all the utility bills, the upkeep on the house, the property taxes, car insurance, and every living expense that a human being had and added in a certain percentage that I felt was warranted for cost of living increases...

Q. All right, so...

A. ...and arrived at the figure on the original, but he had it changed.

Q. ...uh, tell me about this original, was that over a longer period of time...

A. Yes sir, it was...

Q. ...than twenty (20) years?

A. ...it was for thirty (30) years...

Q. Thirty years?

A. ...and I suggested to him at the time that he might be making a mistake in making it a shorter period of time because the odds were in his favor that I would die before thirty (30) years.

Q. How did you arrive at thirty (30) years?

A. Well, I hoped to live thirty (30) more years, and hope and want my children to all get through college.

Q. But the thirty (30) years then that was in the original document was what you anticipated to be your life expentancy [sic], basically?

A. Well, not really, I...

Q. I'm just trying to find out...

A. ...hope to live longer than that.

Q. ...well, how did you arrive at thirty (30) years?

A. I guess I arrived at a certain sum of money and then broke it down.

Q. What was the sum of money that you arrived at?

A. Probably around two hundred thousand dollars ($200,000.00).

Q. And then what was this percentage factor that you used?

A. I didn't use a percentage factor...

Q. I thought you said you did, I'm sorry.

A. ...I said I was just estimating cost of living, you have to figure that in when you're supporting a family.

Q. So the money that you're getting each week was, in fact, what you thought it was going to cost for you and your children to live?

A. Well, to maintain your property and everything else that's in the agreement, with college expenses, taxes, and all of this sort of thing, yes, I thought it would take that much...

Q. But if you know...

A. ...that was just going by bills from the past that we had had together.

Q. O.k. It in no way then was an attempt to arrive at a value of what the assets of your marriage consisted of and you get your share or all of it then?

A. No, it's to maintain the family residence for my children, really, until they're through school.

Q. Until they're through school, well, what was the reason then for carrying it on for thirty (30) years?

A. I really don't know.

Q. Well didn't you do this or did your attorney do it?

A. Yes, I did it. I went through my check register and figured everything up, what I thought my expenses would be, all the way through maintaining a home and sending the kids to college and paying every expense so I wouldn't have to bother him everytime the kids had to go to the doctor or the dentist or whatever. The only thing he is responsible for is the optical expenses. And I broke it down into what I felt he could afford to pay and he is the one who requested the change for a shorter period of time, which made the payments larger."

Record at 212–15.

David petitioned the court for a modification of the alleged maintenance payments because of changed conditions asserting a substantial change in his financial condition since the entry of the decree. David testified that at the time of the agreement he anticipated annual earnings of $50,000 from which to make the payments. Record

at 142. His federal income tax returns which were admitted into evidence reveal earnings of $28,819 in 1981 and $37,930 in 1982. In addition, David testified to substantial indebtedness. The trial court conducted a hearing which resulted in the following judgment:

"[The court finds:]

1. That the petition to modify was not timely filed.

2. That the court finds no fraud nor duress in the making of the agreement of the parties.

3. That the said agreement was for the purpose of promoting the amicable settlement of the parties of the marriage and is not subject to modification.

4. That the petition to dismiss should be granted.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED BY THE COURT that Brenda Pfenninger's petition to dismiss should be and hereby is granted and David Pfenninger's petition to modify is dismissed."

Record at 225.

### ISSUES

The two issues necessary for our determination are:[3]

1. Whether the agreement calling for weekly payments of $432 for 1040 weeks is an agreement for maintenance or a provision for property settlement?

2. If the agreement is one for maintenance is a maintenance agreement subject to modification because of changed conditions?

### DISCUSSION AND DECISION

*Issue One*

■ While the trial court is restricted to ordering maintenance payments only upon a finding of mental or physical incapacity on the part of the party to whom the payments are to be made, Indiana Code section 31–1–11.5–9(c); *Coster v. Coster,* (1983) Ind.App., 452 N.E.2d 397; *Paxton v.*

*Paxton,* (1981) Ind.App., 420 N.E.2d 1346, the parties may enter into an agreement for maintenance without a finding of incapacity. Indiana Code section 31–1–11.5–10(a); *Hull v. Hull,* (1982) Ind.App., 436 N.E.2d 841. Such agreements for maintenance are not limited to circumstances of financial or physical incapacity. Rather, the parties are given the freedom to make continuing financial arrangements in a spirit of amicability and conciliation. Such agreements are binding upon the parties if approved by the court. *Hull.*

It is obvious from the record and the judgment from which this appeal is taken that the trial judge considered the agreement in question to be one of property settlement subject to modification only for fraud in the absence of the parties' consent to modification or a provision for modification on the agreement itself. *See* Indiana Code section 31–1–11.5–10(c); *In re Marriage of Bradach,* (1981) Ind.App., 422 N.E.2d 342.

The crucial question in this case is whether the provision of the agreement approved by the court and incorporated into the decree and which is the subject of this appeal is one for maintenance or is a property settlement provision. Guidance in making this determination is provided by several decisions of this court.

■ In *Coster,* Judge Neal listed as factors tending to show that periodic payments were maintenance (1) a specific designation as "maintenance"; (2) provisions for termination of payments upon the death of either the wife or husband; (3) the installments are to be made from future income. On the other hand, if there is a provision for interest that is characteristic of installment cash awards of marital property. Likewise, if the amount does not exceed the value of the marital assets, property settlement is indicated. *Coster.* In *Whaley v. Whaley,* (1982) Ind.App., 436 N.E.2d 816, this court held an installment award to the wife which terminated upon

---

**3.** Because we determine that the agreement was one for maintenance and that maintenance orders are subject to modification, we need not determine David's claim of fraud or duress.

her death was an illegal award of maintenance, stating that no portion of a property distribution may be conditional upon a change in circumstances. The *Whaley* court distinguished *Hicks v. Fielman,* (1981) Ind.App., 421 N.E.2d 716 because in *Hicks,* as in this case, there was an *agreement* for termination upon the wife's death which agreement was valid. *Hicks* held a provision in a separation agreement for $72,000 alimony payable at $600 per month but payment ceasing upon the death or remarriage of the wife was not for an amount certain, and, therefore, was not alimony in gross for property settlement, but was maintenance. Again in *Wilhelm v. Wilhelm,* (1979) Ind.App., 397 N.E.2d 1079, because the periodic payments ceased upon the wife's remarriage, the award was held to be illegal alimony rather than property division.

■ Applying the foregoing guidelines, we find the agreement in question to be one for maintenance. The relevant section was designated "PERIODIC AND SEPARATE MAINTENANCE PAYMENTS"; if Brenda died, David's payment obligations ceased after 693 payments; no interest was charged; if David died, the obligation to make payments ceased but his $100,000 life insurance benefits were payable to Brenda. Further, the total amount of the payments provided in the agreement is $449,280. It is clear that the parties did not own property in this amount, and this is true even if Brenda's $200,000 figure is used. The payments clearly were to come from David's future income and his testimony attests to that fact. That the payments were intended as maintenance even more clearly is established by the previously quoted testimony of Brenda. Examination of the agreement in light of the guidelines established by the cases compels the conclusion that the challenged provisions of the settlement agreement are for maintenance rather than property settlement.

*Issue Two*

Having decided that the provisions in question are for maintenance, we must now decide if the maintenance agreement was subject to modification for a substantial change of conditions rendering the terms of the agreement unreasonable.

The statute which gives the trial court authority to award maintenance upon a finding of physical or mental incapacity declares that "the court may make provision for the maintenance of said spouse during any such incapacity, *subject to further order of the court."* (Emphasis added.) Indiana Code section 31–1–11.5–9(c). In *Farthing v. Farthing,* (1978) 178 Ind. App. 336, 382 N.E.2d 941, *trans. denied* (1979), this court squarely held that a maintenance award may be modified upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable. *Farthing* further held that the burden of proof is upon the one petitioning for modification to establish the requisite change in circumstances. This court impliedly recognized that maintenance awards may be modified in *Wilhelm* where this court said:

"A degree of flexibility was retained for maintenance awards, but the legislature sought to achieve finality in regard to property division. This approach is consistent with the purposes behind the respective awards.

A maintenance or alimony award is designed to help provide for a spouse's sustenance and support; therefore, conditions are often attached to these awards which permit their alteration in light of changes in circumstances. [Citations omitted.]"

397 N.E.2d at 1081. *See also Paxton,* 420 N.E.2d at 1349, fn. 2 (recognizing that so-called "permanent" maintenance awarded under IC § 31–1–11.5–9(c) is "temporary" in the sense that it is subject to further order of the court).

The clear holding in *Farthing,* and its implied recognition in both *Wilhelm* and *Paxton,* is in accordance with the general rule.

"*Ordinarily the court has the power to modify a decree for alimony, even though it is based upon or incorporates*

*an agreement for payments thereof.* On the other hand, the court does not have the power to modify a true property settlement or a decree incorporating it, even though it provides for periodic payments as distinguished from a lump sum or a transfer of property, unless the settlement itself authorizes a modification by the court. [Emphasis added.]"

24 Am.Jur.2d *Divorce and Separation* § 846 (1983).

 Thus, a provision for maintenance is subject to modification whether it is based upon the decree of the court or upon the agreement of the parties. Our supreme court in *Meehan v. Meehan*, (1981) Ind., 425 N.E.2d 157, 160, stated:

"[T]he fact that a child support order has been entered pursuant to the terms of a settlement agreement, even where, as here, it is intended as forever determinative by the parties, is of no consequence to the questions of whether the order should subsequently be modified. Our courts ... have recognized that the terms of a support order entered pursuant to an agreement may readily be modified to reflect an increase in the amount of support and an extension of the time period in which support must be paid. [Citations omitted.]"

 We perceive no difference between a child support order and a maintenance award in this respect. Both are subject to modification upon a showing of a change of conditions so substantial and continuing as to make the terms unreasonable. That the award was entered as the result of an agreement by the parties is of no moment and does not deprive the parties of the right to seek modification in a proper case.

 Therefore, we hold that the trial court erred in refusing to hear David's petition to modify the maintenance award. We do not hold that the court erred by not granting David's petition. That issue has not been determined by the trial court, and, consequently, is not before us. David is, however, entitled to present his petition at a full hearing thereon where he bears the burden of proof.

We reverse and remand for further proceedings consistent with this opinion.

NEAL, P.J., and ROBERTSON, J., concur.