In re the Marriage of Duane Hopper
MYERS, Appellant,

v.

Beverly Rita MYERS, Appellee.

No. 79S04–9009–CV–611.

Supreme Court of Indiana.

Sept. 18, 1990.

Dennis L. Woods, Karl M. Jacobs, Fowler, for appellant.

Louis Pearlman, Pearlman & Chosnek, Lafayette, for appellee.

PIVARNIK, Justice.

This cause comes to us on a petition to transfer from the Fourth District Court of Appeals brought by Appellee Beverly Rita Myers. Appeal was brought by Petitioner Duane Hopper Myers following denial of his petition to modify the trial court's maintenance award in his dissolution of marriage decree entered in accordance with a prior separation agreement.

Two issues were presented and disposed of by the Court of Appeals:

1) whether the trial court should have modified the maintenance award based on the fact that wife began cohabiting with another man; and

2) whether husband's military retirement pay is maintenance subject to modification or property, distribution of which is settled in a prior settlement between the parties.

The parties were married on June 6, 1963, and the dissolution decree was entered by the White Circuit Court on June 10, 1983. The decree incorporated a prior separation agreement executed by the parties on May 25, 1983, and provided in pertinent part:

3. Husband agrees to furnish directly to Wife all sums reasonable and necessary for her support and maintenance until the entry of a decree of dissolution.

Upon the entry of a decree of dissolution, Husband agrees to pay to Wife, either directly or by United States Military allotment, at the option of Wife, and provided such direct allotment is available, commencing on the first day of the month subsequent to the entry of a decree of dissolution, as maintenance and support for Wife, the sum of One Thousand Four Hundred Dollars ($1,400.00) per month for the first thirty-six (36) months after which time the sum of support and maintenance shall be reduced to one Thousand Dollars ($1,000.00) per month. Said $1,000.00 support and maintenance payments shall cease upon the death of the Husband or Wife or upon the retirement of the Husband from military service. Should the Wife re-marry prior to the Husband commencing to receive his anticipated United States Army Retirement pension, all said support and maintenance for the Wife shall be terminated. After the Husband's retirement should the Wife be unemployed or receiving less than Six Hundred Dollars ($600.00) per month gross in employment earnings, then the Husband shall pay the Wife Two Hundred Dollar [sic] ($200.00) per month in support and maintenance. Such payments shall cease upon the death of the Husband or the Wife or should the Wife remarry. In any case the support and maintenance payments shall cease upon the Husband's 65th birthday or during any period of unemployment by the Husband.

4. Attached hereto and marked "Exhibits A and B" are lists of all property owned by the parties or either of them. Of such property Husband shall take as his sole and separate property the items in "Exhibit A". Husband shall pay to the Wife upon his qualifying for retirement pay from the military service and actually retiring from the military service a sum to be calculated in the following manner: Fifty percent (50%) of the retirement pay that an Army Lieutenant Colonel would receive after 20 years active duty retiring in the month of June 1983. This sum is to include the proportionate cost of living raises as they occur.

The Wife shall take as her sole and separate property the items in "Exhibit B".

\* \* \* \* \* \*

6. Husband agrees to pay Wife Eighteen Thousand Dollars ($18,000.00) in payment of all property rights (*besides retirement pay discussed above*) which sum shall include the following payments made by Husband for which he shall have credit on said Eighteen Thousand Dollars ($18,000.00) payment:

    a. $3,000.00 as payment in full of any and all obligation of Husband on debt in amount of $3,000.00 owed to Wife's mother.

    b. Wife's IRA ($1,400.00).

    c. $785.00 deposited to Wife's bank account in December 1982;

    d. $2,500.00 Husband deposited to Wife's account in January 1983.

*Record* at 15–16 (emphasis added). The decree was modified on March 14, 1985, by inserting the language of the agreement directly into the text of the decree. The court further modified the decree by reducing the maintenance and support payment from fourteen hundred dollars ($1,400.00) per month to one thousand dollars ($1,000.00) per month and eliminating monthly support payments for their youngest child, Valerie. The decree required Husband Duane to pay up to five thousand dollars ($5,000.00) per year for Valerie's college education.

The present action arose on March 2, 1987, upon a petition filed by Husband Duane to again modify the divorce decree. His contention was that Wife Beverly was residing with and being supported by another man and that this created a substantial and continuing change in her circumstances which made his periodic maintenance payments and those which would be made from his military pay unreasonable. He noted he was making support payments to the Clerk of the White Circuit Court rather than to Wife directly because he contested their validity and, further, because Beverly had failed to execute documents which she had been ordered to execute in the March 14, 1985, decree. On July 23, 1987, Wife Beverly filed a cross-pe-

tition to modify the divorce decree alleging Duane had failed to make timely maintenance and support payments.

The facts further developed that in July, 1987, Beverly remarried and moved to Memphis, Tennessee, where her new husband purchased a $245,000.00 home and paid $70,000.00 down.

The trial court found that the maintenance payments should be terminated due to Beverly's remarriage. Further, he found Duane had failed to carry his burden to present evidence demonstrating a substantial and continuing change in circumstances warranting modification of the maintenance orders. Accordingly, the court ordered Duane to pay the four thousand dollars ($4,000.00) being held by the White Circuit Court to Beverly. Finally, the court held that pursuant to the settlement agreement between the parties incorporated into the dissolution decree, Duane's military retirement was property and not maintenance and, therefore, could not be modified by the court.

In the first issue presented, the Court of Appeals affirmed the judgment of the trial court, finding the trial court did not abuse its discretion in denying Duane's petition for modification of the maintenance agreement. The Court of Appeals held that since trial courts are vested with broad discretion in this area there is a strong presumption on appeal that the trial court acted correctly. The trial court will be reversed only for an abuse of discretion. The Court further recognized the public policy of this State which favors separation agreements. Specifically, the Court stated:

> Trial courts are vested with broad discretion in this area. *In re Marriage of Dillman* (1985), Ind.App., 478 N.E.2d 86, 87. Discretion is a privilege afforded a trial court to act in accord with what is fair and equitable in each case. *Id.* We will reverse only for abuse of that discretion. *Temple v. Temple* (1975), 164 Ind. App. 215, 328 N.E.2d 227, 230.

> One of the strongest presumptions on appeal is the trial court acted correctly. *Id.* However, abuse of discretion occurs if the trial court's decision is clearly

against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Dillman, supra*, at 87. An abuse of discretion will also be found when the trial court has misinterpreted the law or when the trial court disregards evidence of factors listed in the controlling statute. *Dillman, supra*, 87–89.

The public policy of this state favors separation agreements. *State ex rel. Roberts v. Morgan Circuit Court* (1968), 249 Ind. 649, 232 N.E.2d 871, 873 (overruled on other grounds). The parties are given freedom to make continuing financial arrangements in a spirit of amicability and conciliation. *Pfenninger v. Pfenninger* (1984), Ind.App., 463 N.E.2d 1115, 1119. Such agreements are binding upon the parties if approved by the trial court. *Id.*, citing, *Hull v. Hull* (1982), Ind.App., 436 N.E.2d 841, 843. A property settlement agreement incorporated into a final dissolution decree and order may not be modified unless the agreement so provides or the parties subsequently consent. *Brownsing v. Brownsing* (1987), Ind.App., 512 N.E.2d 878, 879–880, *reh. denied.* However, a maintenance agreement may be modified. *Pfenninger, supra*, at 1120, citing, *Farthing v. Farthing* (1978), 178 Ind.App. 336, 382 N.E.2d 941, 944, *trans. denied.* Where, however, maintenance as opposed to property is agreed to therein, the maintenance settlor's right to later seek modification of maintenance is not foreclosed. *Pfenninger, supra*, at 1121. Accordingly, we must decide whether the periodic payments Duane made to Beverly constitute maintenance or property.

The following factors indicate periodic payments constitute maintenance if

(1) they are specifically designated as maintenance,

(2) there are provisions for termination thereof upon the death of either the husband or the wife, and

(3) the installments will be made from future income.

*Pfenninger, supra*, at 1119.

Here, the periodic payments made by Duane were maintenance. They were denominated as such in the agreement, they were to terminate upon the death of Duane or Beverly, and the installments were to be made from future income.

The petitioner has the burden of proving a change of conditions so substantial and continuing as to make the terms of the agreement as to maintenance unreasonable. *Pfenninger, supra,* at 1120, 1121. However, we find no Indiana precedent as to whether mere cohabitation is sufficient to abrogate a prior order to pay maintenance as agreed upon.

In a majority of states mere cohabitation is not enough to establish a substantial change in circumstances. *Ramsbottom v. Ramsbottom* (1988), R.I., 542 A.2d 1098, 1101; *Smith v. Mangum* (1987), Az.App. [154 Ariz. 448] 747 P.2d 609, 612; *Glass v. Glass* (1987), Del., 537 A.2d 552, 554; *Gottsegen v. Gottsegen* (1986), Mass. [397 Mass. 617] 492 N.E.2d 1133, 1139; *Overson v. Overson* (1985) [125 Wis.2d 13] Wis.App., 370 N.W.2d 796, 798; *Else v. Else* (1985) [219 Neb. 878] Neb., 367 N.W.2d 701, 704; *Kersten v. Kersten* (1985) [141 Mich.App. 182], Mich.App., 366 N.W.2d 92, 93. The extent of actual economic dependency, not one's conduct as a cohabitant, must determine the duration thereof as well as its amount. *Ramsbottom, supra,* at 1101, citing, *Gottsegen, supra,* [492 N.E.2d] at 1138. Finding these cases well reasoned, we hold mere cohabitation, standing alone, is not so substantial a change of circumstances as to warrant modification of the maintenance provisions of a separation agreement incorporated into a dissolution decree.

Here, the following facts were admitted by stipulation: (1) Beverly was cohabiting with her boyfriend, (2) Valerie and Beverly's parents were residing with them, (3) Beverly was receiving $1,000 a month per the dissolution decree, (4) Duane was not currently paying child support, (5) Beverly's boyfriend was a doctor with a six figure income, (6) he provided Beverly with support in addition to that provided by Duane, (7) Beverly assisted in Valerie's and her parents' support, and (8) when Beverly remarried, her new husband paid $70,000 down on a home valued at $240,000.

These facts do not establish a substantial and continuing change in the circumstances. The amount of additional support Beverly's new companion provided her was not established nor was the nature of the services Beverly rendered him in consideration for that additional support shown. Duane only established Beverly was cohabiting with her boyfriend. Absent proof Beverly's cohabitation before her remarriage substantially changed her financial condition, the maintenance provisions cannot be modified. Accordingly, the trial court did not abuse its discretion by awarding Beverly Duane's $4,000 in maintenance payments being held by the White Circuit Court. *Myers v. Myers,* No. 79A04–8804–CV–111, at 5–8 (Ind.App. March 16, 1989). We hold the Court of Appeals properly disposed of this issue and, accordingly, grant transfer and adopt the opinion of the Court of Appeals as written on this issue and affirm the trial court.

As to the second issue, we find the Court of Appeals incorrectly interpreted the settlement agreement incorporated in the final decree and, accordingly, vacate the opinion of the Court of Appeals on this issue and affirm the trial court.

We agree with Judge Miller in his dissenting opinion holding that Duane's military pension benefits were part of an agreed property settlement and were not subject to modification by the court. Judge Miller properly points out: "Divorcing couples have more freedom in crafting their own settlement agreements than trial court judges have in formulating dissolution decrees." Courts are bound to follow the law in determining what assets can be treated as property in making a final disposition. I.C. 31–1–11.5–2, 10, and 11. *McCarty v. McCarty* (1981), 453 U.S. 210, 236, 101 S.Ct. 2728, 2743, 69 L.Ed.2d 589, 608; *Arthur v. Arthur* (1988), Ind.App.,

519 N.E.2d 230, 231, *aff'd*, (1988), Ind., 531 N.E.2d 477; *Koenes v. Koenes* (1985), Ind. App., 478 N.E.2d 1241, 1242; *Sadler v. Sadler* (1981), Ind.App., 428 N.E.2d 1305, 1308. Parties are not so limited. Parties are free to divide their property in any way they choose and their agreement in that regard is interpreted as any other contract. Where the intentions of the parties can be clearly ascertained by the language employed in a contract, courts will recognize and enforce that agreement. *Goeke v. Merchants Nat'l Bank and Trust Co. of Indianapolis* (1984), Ind.App., 467 N.E.2d 760, 765; *Huntington Mutual Ins. Co. v. Walker* (1979), 181 Ind.App. 618, 620–21, 392 N.E.2d 1182, 1184. The same principle will be applied regarding settlement agreements by parties to a dissolution action where the agreement clearly indicates the parties intended to have the provision applied to and be considered property. *In re Marriage of Buntin* (1986), Ind.App., 496 N.E.2d 1351, 1353. In *Hull v. Hull* (1982), Ind.App., 436 N.E.2d 841, the Court of Appeals held: "[A settlement agreement] gives the parties free rein to make such continuing financial arrangements as, in a spirit of amicability and conciliation, they wish. Such agreements are binding upon the parties if approved by the trial court." *Id.* at 843 (citation omitted). Property settlement agreements in dissolution of marriage cases are encouraged. *Stockton v. Stockton* (1982), Ind.App., 435 N.E.2d 586, 587. It is well settled that a property settlement provision in a dissolution decree is final and is not subject to modification by the court regardless of changing circumstances of the parties. *Wilhelm v. Wilhelm* (1979), Ind.App., 397 N.E.2d 1079, 1082; *Pactor v. Pactor* (1979), 181 Ind.App. 329, 332, 391 N.E.2d 1148, 1150.

Paragraph 3 of the agreement contained all of the provisions for support and maintenance by the husband to the wife. Provisions were made for all eventualities such as remarriage, death of one of the parties, retirement of the husband and attainment of the husband of sixty-five (65) years of age. Notably this paragraph provided that after the husband's retirement, should the wife be unemployed or receiving less than six-hundred dollars ($600.00) gross in employment earnings then the husband shall pay the wife two-hundred dollars ($200.00) per month in support and maintenance. These payments were to cease upon the death of the husband or the wife or the wife's remarriage, or the husband's sixty-fifth birthday. Clearly this provision provides for the wife's maintenance based on her income from earnings and at a time when the husband is retired, but it makes no mention of retirement pension. On the other hand, Paragraph 4 concerns itself with the division of property. It provides that Husband is to take all property designated in Exhibit A and Wife shall take as her sole and separate property all items in Exhibit B. Although Husband points out that the pension does not appear in either of the Exhibits, this does not appear significant because there are other items of property distributed under Paragraph 4 which likewise do not appear in either of the Exhibits. It is in this Paragraph 4 that the parties agreed Husband was to pay a sum calculated by reference as equal to fifty percent (50%) of his retirement to the wife and no limitations were put on this distribution. The fact that the parties agreed to use a figure based on an amount that would be payable in June, 1983, indicates both that the amount of the pension could not be precisely determined and that the parties wished the payment to reflect a 50% wife's share of eventual pension benefits to the extent accumulated during the marriage.

Paragraph 4 also concerns itself with distribution of property and refers to retirement pay as one of the payments of property rights. That is how these provisions of the agreement were interpreted by the trial judge and we find no grounds to second-guess him. His judgment is fully supported by the record.

The trial court is affirmed.

SHEPARD, C.J., DeBRULER, GIVAN and DICKSON, JJ., concur.