**In re the Marriage of Barbara Abel THOMAS, Appellant–Petitioner,**

v.

**Bill J. ABEL, Appellee–Respondent.**

No. 49A02–9602–CV–108.

Court of Appeals of Indiana.

Nov. 17, 1997.

Rehearing Denied Jan. 27, 1998.

**198**

Robert A. Claycombe, Mark C. Sherer, Kothe Claycome Kortepeter & McPherson, Indianapolis, for Appellant–Petitioner.

Michael Cheerva, Phelps & Fara, Indianapolis, for Appellee–Respondent.

## OPINION

HOFFMAN, Judge.

Appellant-petitioner Barbara Abel Thomas ("Wife") appeals the trial court's grant of appellee-respondent Bill J. Abel's ("Husband") petition to modify the spousal maintenance provisions of a settlement agreement entered with Wife, Barbara, upon the dissolution of their marriage.

The parties were married on September 14, 1957, and the dissolution decree was entered on October 19, 1981. The decree incorporated a separation agreement incident to the dissolution which was executed by the parties on October 19, 1981. The agreement was a six-page document that contained ten articles to which the parties consented "in consideration of" the document's "mutual promises." The agreement addressed matters of property disposition, child support, and spousal maintenance. Section 4 of Article IV specifically states the following:

*Support and Maintenance for the Wife.* When and after Husband attains the age of 60 years he shall each month pay to the Wife as support and maintenance an amount equal to one-third (1/3) of his monthly pension (before deduction for a survivor benefit plan) as a retired Army National Guard officer. These payments shall continue until the death of the Wife or the Husband, whichever occurs first. It is further agreed that the Husband will, if the law permits, execute an assignment or any other appropriate document, so that one-third (1/3) of said pension will be paid directly to the Wife. It is further agreed that if the law permits the one-third (1/3) of the pension to be paid directly to the Wife and that said one-third (1/3) can continue after the death of the Husband that the documents necessary to accomplish this will be executed by the Husband.

Article I, Section 1 provides in pertinent part that "[t]his Agreement shall be irrevocably binding upon both parties...."

Husband turned 60 years old in December of 1993. Although Husband began to receive his National Guard pension in January of 1994, he did not pay the one-third to Wife, nor did he file the assignment with the Army Finance which would permit Wife to be paid the amount directly. Wife then made application to the Army Finance and was informed that she was not eligible to receive the money. Nevertheless, Wife began to receive checks starting in August of 1994; however, the amount of the checks was less than the one-third amount she was suppose to receive.

In August of 1994, because of the letter Wife received stating that she was not entitled to Husband's pension, Wife filed a contempt citation seeking to have Husband held in contempt for his failure to pay the one-third of the pension to Wife. In response, Husband filed a petition to terminate or modify the agreement, on November 14, 1994, alleging "a change of circumstances so substantial and continuing as to render [the payment of one-third of his retirement pension to Wife] unreasonable." Hearings were held which were presided over by Master Commissioner Carol Lynn Terzo, and on Oc-

tober 6, 1995, Commissioner Terzo recommended the following:

The Court having taken said cause under advisement and now being duly advised finds and orders as follows:

1. That the maintenance order shall be modified and terminated as of this date.

2. That all money paid per the maintenance order shall not be reimbursed.

3. That each party be responsible for their own attorney fees.

The checks Wife was receiving ceased to come in October of 1995.

On October 11, 1995, Wife filed her motion to strike the commissioner's order. In response to Wife's motion to strike, Judge Kenneth Johnson issued a separate order, on October 12, 1995, approving and adopting the commissioner's recommendations and overruling Wife's motion. On October 21, 1995, Wife filed a motion to correct error. Oral argument on the motion was held on December 19, 1995. Thereafter, on January 17, 1996, the motion was deemed denied. This appeal ensued.

Wife presents five issues for our review which we consolidate and restate as follows:

(1) whether the provision of the agreement providing that Husband pay a portion of his military retirement pension to Wife is one for maintenance or is a property settlement provision;

(2) if the agreement is one for maintenance, is a maintenance agreement subject to modification because of changed conditions; and

(3) whether the trial court abused its discretion in denying Wife's request for attorney's fees.

█■ First, we must determine whether the military retirement payments Husband agreed to pay to Wife constituted maintenance or property. In *Coster v. Coster,* 452 N.E.2d 397 (Ind.Ct.App.1983), this Court listed as factors tending to show that periodic payments were maintenance the following: 1) a specific designation as "maintenance"; 2) provisions for termination of payments upon the death of either the wife or husband; and 3) the installments are to be made from

future income. *Id.* at 403. Here, the periodic payments that Husband was to make to Wife when he turned 60 years old were denominated in the agreement as maintenance. The payments were to continue until the death of either the Husband or the Wife, whichever first occurred. No interest on the payments was to be charged. The payments were clearly to come from Husband's future income. Examination of the agreement in light of the guidelines set forth in *Coster* established that the challenged provision of the settlement agreement was for maintenance rather than property settlement. The trial court did not err in making such determination.

■ Having determined that the provision in question was for maintenance, we must now decide if the maintenance agreement was subject to modification for a substantial change of conditions rendering the terms of the agreement unreasonable.

■ The public policy of this state favors separation agreements. *Myers v. Myers,* 560 N.E.2d 39, 42 (Ind.1990). The parties are given freedom to make continuing financial arrangements in a spirit of amicability and conciliation. *Id.* Such agreements are binding upon the parties if approved by the trial court. *Id.* A property settlement agreement incorporated into a final dissolution decree and order may not be modified unless the agreement so provides or the parties subsequently consent. *Id.*

■ An award of maintenance, however, may be included in a dissolution decree in either of two ways. First, the court may order maintenance pursuant to IND. CODE § 31–1–11.5–9(c) (1993 Ed.)[1] after making the findings required under IND. CODE § 31–1–11.5–11(e) (1993 Ed.),[2] which authorizes the court to find that maintenance is necessary for reasons of a spouse's incapacitation, insufficient assets, or need for rehabil-

itation. IND. CODE § 31–1–11.5–11(e)(1)–(3). Second, the court may order maintenance pursuant to the provisions of IND. CODE § 31–1–11.5–10(a) (1993 Ed.),[3] which authorizes the court to award maintenance pursuant to an agreement between the parties "[t]o promote the amicable settlements of disputes that have arisen or may arise between the parties to a marriage." IND. CODE § 31–1–11.5–10(a).

Where the issue involves the property disposition contained in an approved settlement agreement, the Dissolution Act is unambiguous: "The disposition of property settled by such an agreement and incorporated and merged into the decree shall not be subject to subsequent modification by the court except as the agreement itself may prescribe or the parties may subsequently consent." IND. CODE § 31–1–11.5–10(c). The answer is also clear where the issue involves maintenance that the court has ordered that:

> Provisions of ... an order for maintenance ordered under section 9(c) of this chapter may be modified or revoked. Such modification shall be made only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable.

IND. CODE § 31–1–11.5–17(a) (1993 Ed.).[4] As this Court has stated, however, this provision refers to the modification of only *court-imposed* maintenance, not of approved maintenance agreements. *See Roberts v. Roberts,* 644 N.E.2d 173, 175 (Ind.Ct.App.1994); *see also Bowman v. Bowman,* 567 N.E.2d 828, 830 (Ind.Ct.App.1991). Husband argues that this section should be so extended.

In *Voigt v. Voigt,* 670 N.E.2d 1271 (Ind. 1996), our supreme court was faced with this same question. In *Voigt,* husband and wife, incident to their divorce, negotiated a comprehensive settlement agreement. In paragraph 10 of the agreement, husband agreed to pay wife " 'as maintenance, the sum of $400.00 per week,' " until she died, remar-

---

1. IND. CODE § 31–1–11.5–9(c) was repealed, modified, and recodified as IND. CODE § 31–15–7–1 (1997 Burns Repl.).

2. IND. CODE § 31–1–11.5–11(e) was repealed and recodified as IND. CODE § 31–15–7–2 (1997 Burns Repl.).

3. IND. CODE § 31–1–11.5–10 was repealed, modified, and recodified as IND. CODE § 31–15–2–17 (1997 Burns Repl.).

4. IND. CODE § 31–1–11.5–17 was repealed, modified, and recodified as IND. CODE § 31–15–7–3 (1997 Burns Repl.).

ried, or reached age 65. *Id.* at 1272. Paragraph 20 of the agreement provided that " '[a] modification . . . of any of the provisions of this Agreement shall be effective only if made in writing and executed with the same formality as this Agreement.' " *Id.* Within a month, however, husband stopped paying the spousal maintenance. Thereafter, husband petitioned the trial court for a modification of the maintenance provision citing an alleged " 'material change' " in his " 'financial circumstances' " which made it " 'impossible and unreasonable' " for him to make the promised payments. *Id.* at 1273. Wife filed a motion to dismiss which was, subsequently, granted by the trial court. On appeal, this Court reversed the trial court's dismissal of husband's petition.

Our supreme court granted transfer to determine whether a trial court has the authority to modify a maintenance obligation originating in a settlement agreement. In concluding that the trial court lacked the authority, Chief Justice Shepard stated that:

> Where a court had no authority to impose the kind of maintenance award that the parties forged in a settlement agreement, the court cannot subsequently modify the maintenance obligation without the consent of the parties. In essence, the parties must agree to amend their settlement agreement, because the sole authority for the maintenance obligation originally derived from their mutual assent. [Footnote omitted]. In approving or rejecting any submitted modification agreement, a court should apply the same standard it would use in evaluating an initial settlement agreement.
>
> We now hold that a court has no statutory authority to grant a contested petition to modify a maintenance obligation that arises under a previously approved settlement agreement if the court *alone* could not initially have imposed an identical obligation had the parties never voluntarily agreed to it. [Emphasis original.]

*Id.* at 1279–80.

■■■ While a court itself may award maintenance only under the narrow circum-

stances outlined in § 11(e) of the Dissolution Act, the parties are not so limited in drafting settlement agreements. *Voigt,* 670 N.E.2d at 1277. The parties are free " 'to make such continuing financial arrangements as, in a spirit of amicability and conciliation, they wish.' " *Id.* This flexibility serves at least two purposes: (1) it enables a couple to dissolve their marital relationship on mutually acceptable terms without resort to judicial impositions, and (2) it provides the only effective mechanism by which divorcing couples can structure their financial relations so as to take advantage of the Internal Revenue Code's special treatment of maintenance payments. *Id.* However, once the parties have entered a settlement agreement and that agreement has been accepted by the trial court and incorporated into the dissolution decree, in most cases, the trial court may not subsequently modify the maintenance agreement upon the petition of one party and over the opposition of the other. *Id.* at 1278.

Here, both Husband and Wife voluntarily entered into a settlement agreement which the trial court approved and incorporated into the dissolution decree. As part of the agreement, Husband agreed that when he reached the age of 60 years old he would each month pay to Wife "as support and maintenance an amount equal to one-third (1/3) of his monthly pension . . . as a retired Army National Guard Officer." In applying the reasoning of *Voigt* to the instant case, we find that because Husband and Wife freely and voluntarily entered into the settlement agreement which included the maintenance provision, the trial court lacked the authority to modify the settlement agreement and terminate Husband's maintenance obligation. Therefore, Husband's petition for modification should have been dismissed.

■■■ Wife also argues that the trial court abused its discretion in failing to order Husband to pay her attorney's fees. Under IND. CODE § 31–1–11.5–16 (1993 Ed),[5] the trial court may award attorney's fees at any

---

**5.** IND. CODE § 31–1–11.5–16 was repealed, modified, and recodified as IND. CODE § 31–

15–10–1 (1997 Burns Repl.).

stage of the dissolution proceeding. *Maloblocki v. Maloblocki,* 646 N.E.2d 358, 364 (Ind. Ct.App.1995). The statute affords the trial court broad discretion in assessing attorney's fees, but does not mandate that the trial court assess attorney's fees in the first instance. *Id.* There is no abuse of discretion for the trial court not to do that which it is not required to do. *Id.; Rump v. Rump,* 526 N.E.2d 1045, 1047 (Ind.Ct.App.1988), *trans. denied.*

This cause is affirmed in part and reversed in part, and remanded for proceedings consistent with this opinion.

STATON and FRIEDLANDER, JJ., concur.