
FILED

Oct 13 2017, 9:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Debra Lynch Dubovich
Levy & Dubovich
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Sandra Moreno-Garcia
Hobart, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ginger Moell,

*Appellant-Respondent,*

v.

Stephen R. Moell,

*Appellee-Petitioner*

October 13, 2017

Court of Appeals Case No.
45A05-1704-DR-784

Appeal from the Lake Superior
Court

The Honorable John M. Sedia,
Special Judge

Trial Court Cause No.
45D01-1505-DR-3

**May, Judge.**

[1] Ginger Moell ("Mother") appeals the trial court's order regarding custody of N.M. and W.M. (collectively, "Children"). She presents several arguments for our review, which we restate as:

> 1. Whether the trial court had authority to modify the parties' settlement agreements;
>
> 2. Whether the trial court abused its discretion when it modified the parties' mediated custody agreement regarding W.M.; and
>
> 3. Whether the trial court abused its discretion when it sua sponte granted N.M. authority over decisions regarding his exercise of parenting time; health care; and participation in school, extracurricular, and religious activities.

We affirm in part, reverse in part, and remand.

# Facts and Procedural History

[2] Mother and Stephen Moell ("Father") (collectively, "Parents") divorced on October 2, 2012. The dissolution proceedings resulted in three detailed, mediated settlement agreements regarding the custody and care of N.M. and W.M., born November 18, 1999, and October 17, 2003, respectively. Parents used a Parenting Time Coordinator to assist with co-parenting Children.

[3] In 2013, Father remarried and moved approximately forty-five minutes away from Mother's residence. Children lived in Mother's residence the majority of the time. Children were heavily involved in extracurricular and religious activities, and many of those activities interfered with parenting time

arrangements. On March 24, 2015, Father filed a petition to modify parenting time. Father filed an amended petition to modify parenting time on June 3, 2015.

[4] With the assistance of the Parenting Time Coordinator, the parties entered into a Partial Agreed Order regarding Father's petition to modify parenting time, and agreed to use Dr. Marguerite Rebesco to "conduct counseling and therapy to help the parties communicate, cooperate and parent their children." (App. Vol. II at 72.) On February 22, 2017, Mother filed a motion for contempt based on Father's cancellation of one of Dr. Rebesco's appointments.

[5] On March 10, 2017, the trial court held a hearing on Father's petition to modify parenting time and Mother's motion for contempt. The trial court interviewed Children *in camera*. On March 30, 2017, the trial court entered an order modifying parenting time:

> 1. Pursuant to the mediation agreements, entered as orders by the Court, [Mother] and [Father] maintain joint legal custody. All other provisions of all three mediation agreements pertaining to custody and parenting time, including those pertaining to right of first refusal, are vacated.
>
> 2. [N.W.] shall exercise parenting time, participation in school, extracurricular and religious activities as he shall determine is in his own best interests. [N.W.] shall also make all final decisions pertaining to his health care.
>
> 3. [Father] and [Mother] shall continue to exercise joint legal custody over [W.M.], with [Mother] making all final decisions pertaining to education and religious upbringing, including

extracurricular activities associated with each, and [Father]
making all final decisions over health care.

4.  All issues pertaining to parenting time shall be governed by
the Indiana Parenting Time Guidelines, including the provisions
pertaining to Opportunity for Additional Parenting Time, except
that [Father] shall have parenting time with [W.M.] each week
from Thursday at 5:00 p.m. through Sunday at 7:00 a.m.  For
purposes of calculating summer and holiday parenting time only,
[Mother] shall be designated as the custodial parent.

* * * * *

7.  Kim Harmon is discharged of all duties as Parenting Time
Coordinator and Dr. Marguerite Rebesco is discharged of all
duties as counselor with the sincere thanks of the Court for jobs
well done.

(*Id*. at 14-5.)

# Discussion and Decision

## Court's Authority to Modify Terms of Settlement Agreement

Mother argues the trial court did not have authority to vacate the terms of the

three mediated settlements ratified as part of their dissolution decree.[1]  She

---

[1] Mother raised this issue as an abuse of the trial court's discretion.  (*See* Appellant's Br. at 33.)  However,
questions about whether the court has authority to rule on an issue are more appropriately framed as
questions of law that we review *de novo*, because the resolution is not controlled by the specific facts that may
have been found by the court.  *See Howard v. American Family Mut. Ins. Co.*, 928 N.E.2d 281, 282 (Ind. Ct.
App. 2010) (whether trial court had authority to perform an action is a question of law the appellate court
reviews *de novo*).

contends the mediated settlement agreements were binding contracts and thus the trial court did not have authority to modify them. In support of her argument, she cites multiple family law cases that hold settlement agreements are binding contracts. However, those cases are distinguishable because they deal with property settlements, not settlements involving the care of children. *See Pohl v. Pohl*, 15 N.E.3d 1006 (Ind. 2014) (interpreting spousal maintenance agreement); *Myers v. Myers*, 560 N.E.2d 39 (Ind. 1990) (involving modification of maintenance agreement and interpretation of property settlement agreement); *White v. White*, 819 N.E.2d 68 (Ind. Ct. App. 2004) (interpreting trial court's classification of a lien in the parties' settlement agreement); *Rothchild v. Devos*, 757 N.E.2d 219 (Ind. Ct. App. 2001) (involving the validity of a property settlement agreement).

[7] Mother cites no case law involving the modification of a settlement agreement involving child-related matters. To treat a settlement agreement regarding the care of children the same as a settlement agreement involving property is contrary to the court's paramount concern of ruling in the best interests of the children. *See, e.g., Joe v. Lebow*, 670 N.E.2d 9, 22 (Ind. Ct. App. 1996) ("in deciding whether to modify custody, the paramount concern is the best interests of the child"); *Wible v. Wible*, 245 Ind. 235, 237, 196 N.E.2d 571, 572 (1964) ("It is the children's welfare - not the parents' - that must control the actions of the court."), *reh'g denied*; Ind. Code § 31-14-14-2 ("The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child.").

[8] Specifically regarding modification of a settlement agreement involving children, our Indiana Supreme Court stated in *Meehan v. Meehan*, 425 N.E.2d 157 (Ind. 1981), *superseded by statute as stated in Reinhart v. Reinhart*, 938 N.E.2d 788, 793 n.2 (Ind. Ct. App. 2010), "the fact that a child support order has been entered pursuant to the terms of a settlement agreement, even where, as here, it is intended as forever determinative by the parties, is of no consequence to the question whether the order should be subsequently modified." *Id.* at 160. Thus, the trial court had authority to consider Father's motion for modification of parenting time.

## Modification of Parenting Time

[9] Our standard of review in cases involving requests to modify parenting time[2] is well-settled:

> Upon review of a trial court's determination of a visitation issue, we will grant latitude and deference to our trial courts, reversing only when the trial court manifestly abuses its discretion. *Kirk v.*

---

[2] Mother argues the trial court abused its discretion when it *sua sponte* modified custody when Father requested the trial court modify parenting time. We addressed the differences between a modification of custody and a modification of parenting time in *Julie C. v. Andrew C.*, 924 N.E.2d 1249 (Ind. Ct. App. 2010), and *Miller v. Carpenter*, 965 N.E.2d 104 (Ind. Ct. App. 2012). In *Julie C.*, we held a modification of father's overnights to seven overnights during a fourteen-day period was a "*de facto* modification of custody to joint physical custody." 924 N.E.2d at 1256. In that case, the modification made it so each parent had the child essentially fifty percent of the time. However, in *Miller*, our court held and increase from 35% to 45% of overnights was not a modification of custody and instead a modification of parenting time. 965 N.E.2d at 111.

In this case, the trial court granted Father three overnights to Mother's four overnights, excluding holidays. Mother is considered the custodial parent, as she was in the past, for calculation of summer and holiday parenting time. Therefore, Father and Mother do not share custody of Children equally, and Mother's argument fails based on the holdings of *Julie C.* and *Miller*. The trial court did not *sua sponte* modify custody of Children. Instead, it modified parenting time, as Father requested.

*Kirk*, 770 N.E.2d 304, 307 (Ind. 2002); *Lasater v. Lasater*, 809 N.E.2d 380, 400 (Ind. Ct. App. 2004). No abuse of discretion occurs if there is a rational basis in the record supporting the trial court's determination. *Lasater*, 809 N.E.2d at 400. Therefore, on appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal. *Kirk*, 770 N.E.2d at 307. We will neither reweigh evidence nor judge the credibility of witnesses. *Lasater*, 809 N.E.2d at 400. In all visitation issues, courts are required to give foremost consideration to the best interests of the child. *Id*.

*Duncan v. Duncan*, 843 N.E.2d 966, 969 (Ind. Ct. App. 2006), *trans. denied*.

### *Father's Parenting Time with W.M.*

[10] Regarding W.M., the trial court observed:

> [W.M.], a young teenager, still needs the guidance of his parents, and is used to which parent makes which ultimate decisions pertaining to his upbringing, but needs to have more certainty and less travel time in his life: [Father] and [Mother] live at least a 45-minute drive from each other, resulting in [W.M.] spending large chunks of time being transported rather than participating in the multitude of activities he enjoys, being able to get his homework done, or just plain hanging out with mom or dad in a venue other than an automobile. The distance between [Father] and [Mother] also makes their agreement regarding what they called the Right of First Refusal impractical: a 45-minute drive each way puts a great deal of stress not only on [W.M.], but also his parents. It is simply too great a distance to travel for the exercise of three hours of parenting time.

(App. Vol. II at 14.) Based thereon, the trial court ordered:

3. [Father] and [Mother] shall continue to exercise joint legal custody over [W.M.], with [Mother] making all final decisions pertaining to education and religious upbringing, including extracurricular activities associated with each, and [Father] making all final decisions over health care.[3]

4. All issues pertaining to parenting time shall be governed by the Indiana Parenting Time Guidelines, including the provisions pertaining to Opportunity for Additional Parenting Time, except that [Father] shall have parenting time with [W.M.] each week from Thursday at 5:00 p.m. through Sunday at 7:00 a.m. For purposes of calculating summer and holiday parenting only, [Mother] shall be designated as the custodial parent.

(*Id*. at 15) (footnote added).

[11]    Mother argues modification of Father's parenting time with W.M. is not in W.M.'s best interests because the trial court noted Children were "happy, healthy, and well-adjusted." (*Id*. at 12.) However, the trial court also noted the current arrangements "have brought contention, confusion and stress upon all of them" and it was in Children's "best interests to modify the current custodial and parenting time arrangements to bring some modicum of stability, consistency and certainty to their lives." (*Id*.) Both parties presented evidence

---

[3] Mother takes issue with the trial court's use of the language "joint legal custody" to describe the arrangement agreed to by the parties regarding the legal decisions each make on W.M.'s behalf. However, in *Gonzalez v. Gonzalez*, we held a very similar arrangement was "joint legal custody." 893 N.E.2d 333, 336 (Ind. Ct. App. 2008). In *Gonzalez*, we affirmed a custody arrangement whereby Father would make all decisions regarding education and religious training and Mother would make health care decisions. While we recognized the distribution of decision-making power was not "a typical joint legal custody arrangement," *id*., we nevertheless referred to the court's order as one granting "joint legal custody." *Id*. at 336-7. Thus, the trial court here was not incorrect when it termed parents' identical arrangement as joint legal custody.

of difficulty with the current parenting time schedule including issues with homework completion, transportation, church attendance, and bonding with stepmother. As it is evident the current agreement has caused problems as Children have gotten older, the record demonstrates modification of Father's parenting time is in W.M.'s best interest. Mother's argument is an invitation for us to reweigh the evidence, which we may not do. *See Duncan*, 843 N.E.2d at 969 (appellate court cannot reweigh evidence or judge credibility of witnesses).

### *Findings and Conclusions Regarding N.M.*

[12] The trial court ordered, "[N.M.] shall exercise parenting time, participation in school, extracurricular and religious activities as he shall determine is in his own best interests. [N.M.] shall also make all final decisions pertaining to his health care." (App. Vol. II at 14.) Regarding N.M., the trial court observed,

> [Father's] and [Mother's] custodial arrangement is particularly outdated when it comes to [N.M.], who, by all accounts is a mature, level-headed young man: he will be an adult in six months' time. How much time he spends with each parent, in which religious or educational activities he should participate and what is in his best interest as far as health care should be decisions that [N.M.], and not his parents, should make.

(*Id.* at 13.)

[13] Mother argues the trial court's order amounts to "quasi-emancipation" and there "was no evidence that N.M. was emotionally or financially equipped to

make the type of decisions the trial court imposed upon him." (Br. of Appellant at 23.) Further, she notes:

> This portion of the order is even more troubling because neither party requested N.M.'s quasi-emancipation. There was no petition on file or testimony from either parent requesting that outcome. If either parent had been provided with reasonable notice that the result was even a possibility, the parents may have presented relevant evidence to the trial court as to why this would or would not be in the child's best interests.

(*Id*.) Father contends, in essence, the trial court's decision was an exercise of judicial economy considering N.M.'s age and the trial court was "saving time and resources of everyone involved by preventing further litigation after N.M. reaches the age of eighteen." (Br. of Appellee at 9.) This is a matter of first impression, and neither party has provided much legal precedent for his or her respective arguments.

[14]  Indiana Code section 31-16-6-6, which governs the emancipation of a child for child support purposes, is in place to "require that parents provide protection and support for the welfare of their children until the children reach the specified age or no longer require such care and support." *Butrum v. Roman*, 803 N.E.2d 1139, 1146 (Ind. Ct. App. 2004), *reh'g denied*, *trans. denied*, *abrogated on other grounds by Hirsch v. Oliver,* 970 N.E.2d 651, 658 (Ind. 2012). Emancipation occurs by operation of statute when a child becomes nineteen years old. Ind. Code § 31-16-6-6(a). Emancipation can also occur when a child is at least eighteen years old, "has not attended a secondary school or

postsecondary educational institution for the prior four (4) months and is not enrolled in a secondary school or postsecondary educational institution" and "is or is capable of supporting himself or herself through employment." Ind. Code § 31-16-6-6(a)(3). Additionally, a child can be considered legally emancipated before turning nineteen years old if the child "(1) is on active duty in the United States armed services; (2) has married; or (3) is not under the care or control of: (A) either parent; or (B) an individual or agency approved by the court." Ind. Code § 31-16-6-6(b).

[15] Here, the trial court has essentially removed N.M. from the care and control of his parents. Pursuant to the court's order, he is not required to comply with parenting time requirements, can make his own healthcare decisions, and can make decisions about his education, extracurricular activities, and religious training. His parents, however, are still required to support him financially, as the trial court did not modify the child support agreement. There is also no evidence to suggest N.M. lives outside of Mother or Father's house or has employment. While the trial court's order did not amount to emancipation as contemplated in Indiana Code section 31-16-6-6, we are still troubled by the implications of allowing a minor, regardless of age and maturity, *carte blanche* in making decisions regarding his life while his parents are still legally bound to support him financially.

[16] Parents have a "constitutionally recognized fundamental right to control the upbringing, education, and religious training of their children. . . . [and] have the right to raise their children as they see fit." *Swartz v. Swartz*, 720 N.E.2d

1219, 1221 (Ind. Ct. App. 1999). Specifically regarding the exercise of parenting time, the Indiana Parenting Guidelines Section I(E)(3) states: "If a child is reluctant to participate in parenting time, each parent shall be responsible to ensure the child complies with the scheduled parenting time. In no event shall a child be allowed to make the decision on whether scheduled parenting time takes place." Further, Comment 1 under Indiana Parenting Time Guideline Section II(E), provides, in relevant part:

> The rearing of a teenager requires parents to make decisions about what their teen should be allowed to do, when, and with whom. . . . If parents are not able to agree, the teenager, who very much wants freedom from adult authority, should never be used as the "tie breaker." . . . As a general rule, a teenager should be involved in making important decisions if the parents agree the opportunity to make the decision is valuable, and the value of that opportunity outweighs any possible harm of a poor decision. If the parents feel the welfare of the child is dependent on the decision made, and if they allow the child to make a decision simply because they cannot agree, the parents are in danger of failing the child.

[17] The trial court noted the good intentions of the parties regarding parenting time have not worn the test of time:

> When [Father] and [Mother] dissolved their marriage, they made a good faith effort in the spirit of cooperative parenting to reach accord regarding all the incidents of their marriage, including their two young sons [N.M.] and [W.M.]. Unfortunately, after three mediated agreements, the appointment of a parenting time coordinator, and extensive counseling, the custodial and parenting time arrangements that were achieved through mediation have brought contention, confusion and stress on all of

them. The boys have grown to be happy, healthy, and well-adjusted. They are both excellent students and enjoy participation in many school, religious and sports extracurricular activities which have grown exponentially as they attained their teenage years. Serious conflicts have arisen between [Father] and [Mother] as they navigate through their boys' numerous activities as they try to implement the parenting time arrangements they mediated. Notwithstanding their good faith, and their willingness to obtain assistance through counseling, mediation and parenting time coordination, it is in the boys' best interests to modify the current custodial and parenting time arrangements to bring some modicum of stability, consistency and certainty to their lives.

(App. Vol. II at 12.) During the hearing, Father indicated he did "not feel that [his] parenting time [was] ever given as a priority," (Tr. at 75), because Mother would routinely schedule activities on dates when Children were scheduled to be with Father. Mother expressed frustration at Father's alleged inattention to Children's homework responsibilities when Children were in his care. The Parenting Time Coordinator indicated:

> I feel with [N.M.], it has been a little bit - there's been some conflict there with [N.M.] pulling away at some points, feeling, again - you know, [N.M.] expressed to me that he basically wanted the fighting to stop, did not want his parents to continue going to Court, and basically wanted the emails to stop, you know, this incessant communication and feeling that everything needed to be perfect in the family. So I mean he was basically looking for some flexibility. You know, he loves his - he loves both his parents, so.
>
> [W.M.], I feel maybe a little bit emotionally may be more aligned with [Mother] in that he - I think he's nervous and afraid to upset

anybody at this point. He [sic?] younger. So he's trying to navigate through both parents so that he can stay out of the middle of the conflict. So I feel like he's a little bit more flexible. He's younger at this point.

(*Id.* at 16.)

[18] Based on the level of turmoil between the parties, it is understandable the trial court would want to attempt something novel to resolve an issue that may well be moot in a short amount of time based on N.M.'s age. However, it is not in the record how N.M. would qualify for emancipation at eighteen years old, which is the age at which the court claims he "will be an adult in six months' time." (App. Vol. II at 13.) Further, the trial court's order regarding N.M. contradicts the provisions and commentary provided by the Indiana Parenting Time Guidelines. Based thereon, we reverse the trial court's decision regarding the modification of parenting time of N.M. and remand for further proceedings.[4]

# Conclusion

---

[4] Mother also argues the trial court abused its discretion when it modified its earlier order requiring the parties and Children to attend counseling sessions with Dr. Rebesco by discharging Dr. Rebesco from service in its final order. The order stemmed from an agreement between the parties to engage in the counseling services to "help the parties communicate, cooperate and parent their children." (App. Vol. II at 72.)

The trial court did not indicate why it released Dr. Rebesco in this case. As we reverse the trial court's decision regarding N.M., it may be possible Dr. Rebesco's services are still required. We remand the issue to the trial court for further consideration and detailed findings.

[19]     We conclude the trial court did not err as a matter of law when it vacated the parties' original settlement agreements regarding Children's care. Nor did the court abuse its discretion when it modified Father's parenting time with W.M. However, the trial court did not have authority to allow N.M. to make his own decisions regarding parenting time and related issues. Therefore, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

[20]     Affirmed in part, reversed in part, remanded.


Barnes, J., and Bradford, J., concur.